## A02A0701. CGU INSURANCE COMPANY v. SABEL INDUSTRIES, INC. et al.
### (564 SE2d 836)

SMITH, Presiding Judge.

This appeal arises out of the trial court's dismissal of an action filed by CGU Insurance Company against Douglas and Amy Harri-

---

son for recovery of workers' compensation benefits paid to Douglas Harrison. The trial court dismissed the action and dissolved CGU's subrogation lien on the ground that CGU failed to meet its burden of proving that Harrison had been fully and completely compensated for his losses under OCGA § 34-9-11.1 (b), among other grounds. Because some evidence supports the trial court's decision, we affirm. We also conclude that CGU is not allowed under the statute to assert a lien against the settlement with respect to benefits not yet paid to Harrison.

On February 29, 2000, during the course of his employment with Newnan Land Development, Douglas Harrison was catastrophically injured while driving his vehicle. As he met and passed by a tractor-trailer traveling in the opposite lane toward him, four large metal plates weighing approximately 400 pounds each fell from the trailer and struck Harrison's vehicle. The tractor-trailer was operated by a Sabel Industries, Inc. employee. Harrison's left leg was nearly severed by one of the plates, and amputation above the knee was required later that day.[1] Several additional surgeries over the next month were required to remove infected tissue, to adjust the length of his limb, and to prepare him to be fitted for a prosthesis. He then underwent several months of rehabilitation and was fitted for and received a prosthesis. Using modified machinery at his job as a tug boat operator, Harrison returned to work at his pre-injury wage approximately one year after the accident, earning approximately $34,000 per year. Harrison is married and has three children, aged ten, six, and six months at the time of the accident.

CGU paid workers' compensation benefits on behalf of Harrison's employer. As of June 15, 2001, CGU had paid $212,333.92 in medical expenses, temporary total disability benefits, and permanent partial disability benefits. In October 2000, Harrison and his wife filed a negligence action against Sabel Industries and the driver of the tractor-trailer. Following mediation in April 2001, the Harrisons' claims were settled for $4,500,000, with $4,000,000 allocated as a lump-sum payment and $500,000 paid out through an annuity. Meanwhile, in March, CGU placed the parties on notice of its claimed subrogation rights. Issues concerning the subrogation lien were not resolved during the mediation. The Harrisons filed a motion to confirm settlement, to add CGU as a party defendant, and to dissolve

---

[1] To remove Harrison from the wreckage, a paramedic had to cut away a portion of tissue on his lower leg, because a piece of metal had impaled his leg and rested against the steering column. Harrison never fully lost consciousness during the time required to remove him from the wreckage and transport him to the hospital, and he was not given pain medication at the scene.

the workers' compensation lien. CGU filed a motion to intervene, which was subsequently granted.

The trial court then conducted a hearing to determine whether CGU is entitled to recover on its subrogation lien under OCGA § 34-9-11.1. After CGU presented its evidence, the trial court granted a directed verdict to the Harrisons, stating that CGU had not carried its burden of proving full and complete compensation. The court also stated that CGU had not proved which portion of the settlement was attributable to Mrs. Harrison's consortium claim. In a formal written order, the court stated that the motion for directed verdict had been transformed into a motion to dismiss.[2] The court granted the motion and dissolved CGU's lien. CGU appeals, arguing that the trial court erred in granting a directed verdict on the basis that CGU failed to prove full and complete compensation as to all present and future economic and noneconomic losses. CGU also maintains that the court erred in placing the burden on it to prove the value of Mrs. Harrison's consortium claim and in directing a verdict on the ground that no evidence was presented as to the value of that claim.

1. We first address CGU's argument that the trial court erred in concluding that it failed to meet its burden of proving full and complete compensation to Harrison. Under OCGA § 34-9-11.1 (b), if an injured employee asserts a right of action against a person other than the employer,

> and the employer's liability under this chapter has been fully or partially paid, then the employer or such employer's insurer shall have a subrogation lien, not to exceed the actual amount of compensation paid pursuant to this chapter, against such recovery. The employer or insurer may intervene in any action to protect and enforce such lien. However, the employer's or insurer's recovery under this Code section shall be limited to the recovery of the amount of disability benefits, death benefits, and medical expenses paid under this chapter and shall only be recoverable if the injured employee has been fully and completely compensated, taking into consideration both the benefits received under this chapter and the amount of the recovery in the third-party claim, for all economic and noneconomic losses incurred as a result of the injury.

---

[2] Procedurally, this was a correct method to dispose of the motion. "In a bench trial there is no jury verdict. Thus, it is procedurally incorrect to move for a directed verdict; and such motion, as well as the grant thereof, will be construed as one for involuntary dismissal under OCGA § 9-11-41 (b). [Cit.]" *Hertz Corp. v. McCray*, 198 Ga. App. 484 (1) (402 SE2d 298) (1991).

The trial court concluded that the evidence presented by CGU was inadequate to show full and complete compensation to Harrison. The court found the expert testimony introduced by CGU to be speculative and also concluded that because the settlement did not allocate a specific award to Mrs. Harrison for her consortium claim, it could not determine whether the remainder of the settlement fully and completely compensated Harrison.

CGU presented the testimony of two experts. Zan Lanford, a certified rehabilitation registered nurse and rehabilitation consultant, testified concerning Harrison's future medical and vocational needs, stating that his future medical needs are minimal and that his vocational outlook is bright given his education and vocational history. Although not familiar with the industry, she stated that Harrison had previously worked in the grain industry and that if he were to transition into another vocation, he is employable, based on her review of the labor market. She stated that his history in management could transfer into another job, as well as his previous history of working in agriculture. Also, Lanford testified that he needed only one college credit to receive a bachelor's degree and that obtaining this degree would make him more marketable.

On cross-examination, however, Lanford admitted that although she reviewed information from the Department of Labor to determine Harrison's vocational outlook, she did not perform a labor market survey, which would have been required to comprehensively determine his employability. In addition, in assessing his future needs, she did not speak with Harrison, his wife, or the rehabilitation supplier who actually worked with Harrison. With regard to his educational background, Lanford did not know the name of the college he attended, nor did she know how many of his college credits would transfer several years after they were received. Those credits were earned toward a degree in physical education, and Lanford acknowledged that this degree would be of no use to Harrison after the accident. Although she previously testified that he needed only one college credit to graduate with a bachelor's degree, she admitted that she in fact did not know how long completion of a bachelor's program would take.

As for Harrison's vocational outlook, Lanford was aware of the recommendation of Harrison's physician that he avoid slippery and uneven surfaces, and she stated that she would not recommend working on a boat on a lake. She testified concerning the possibility of his working in the grain industry but admitted that she did not know what type of work he would be doing, and her assessments had not included adaptations and modifications for machinery that would be needed for field work. In fact, she acknowledged that she did not know the nature of Harrison's previous work at a seed company and

if this work required field work. Harrison testified that a portion of his previous experience did require him to work in the field.

In addition, Lanford agreed on cross-examination that large individuals, such as Harrison, with above-the-knee amputations often experienced difficulties with gait, including chronic hip and back pain sometimes requiring surgery. She did not know whether Harrison would need this surgery. She further testified that, in addition to the primary prosthetic used by an amputee, two other types of prosthetics were essential — a backup for use when the primary prosthetic is damaged, and one intended for use while bathing. She did not know, however, whether these devices had been provided to Harrison. Harrison testified that CGU denied him a backup prosthetic.

Patricia Killingsworth, a mediator and arbitrator, also testified on behalf of CGU. She evaluated Harrison's economic and noneconomic losses, stating that the total loss was approximately $1.3 million. Her assessment for the portion of this sum representing lost wages did not, however, take into account the possibility of future surgeries and associated lost work time. In evaluating Harrison's losses, Killingsworth relied on information provided by Lanford. She admitted that her calculation concerning future lost wages was inaccurate, since the information provided by Lanford was based on Lanford's uninformed opinion that he needed only one college credit. In addition, although Killingsworth was an experienced mediator, she had no previous experience evaluating above-the-knee amputations. Finally, like Lanford, Killingsworth did not interview Harrison, and she agreed this would have been helpful in evaluating his pain and suffering.

In ruling on the Harrisons' motion for directed verdict, the trial court stated that CGU's "experts, both of them, speculated on things that they should know and were missing things that were essential" and that the "experts were missing some key information that would have made their numbers something more reliable than speculation." In addition, the court concluded that it could not determine whether Harrison was fully and completely compensated because sufficient evidence was not presented concerning Mrs. Harrison's consortium claim, and the court therefore could not determine "how much of this money is his." In its written order, the trial court stated that CGU could not enforce its lien against the settlement proceeds due Mrs. Harrison and noted that the settlement was not divided to allow it to determine which portion of the proceeds was intended for Harrison, and which was intended for Mrs. Harrison. The court then found CGU's evidence to be

woefully deficient in proving full and complete compensation to Plaintiff Douglas Harrison. CGU's experts conceded mate-

rial omissions in their fact gathering effort and appeared to contradict each other on several significant matters. Despite the assistance from experts, CGU simply failed to demonstrate with sufficient mathematical certainty which portion of the lump sum settlement was subject to CGU's lien.

CGU contends that the trial court erroneously placed the burden of proving the value of Mrs. Harrison's consortium claim on it and, alternatively, that its evidence was sufficient to prove the value of the claim. But we need not reach these issues. Even assuming, without deciding, that the entire settlement constituted an award to Harrison alone, the trial court's conclusion that CGU failed to meet its burden is supported by the record. Under OCGA § 9-11-41 (b),

> a trial judge in a non-jury case expressly has the power to adjudicate the case on the merits at the conclusion of plaintiff's case. . . . Since the court determines the facts as well as the law, it necessarily follows that the motion may be sustained even though [the] plaintiff may have established a prima facie case. Thus, in cases of this nature, the trial judge sits as trier of fact, and [its] findings are analogous to the verdict of a jury and should not be disturbed if there is any evidence to support them.

(Citation and punctuation omitted.) *Hertz Corp. v. McCray*, 198 Ga. App. 484-485 (1) (402 SE2d 298) (1991). The trial court correctly found that the experts' testimony was "woefully deficient." As discussed above, they spoke to neither Harrison nor his wife during their fact-gathering efforts, and a number of facts concerning Harrison's physical, educational, and vocational needs, which were essential to an accurate determination of Harrison's losses, were not included in their evaluations. As a consequence, those evaluations were speculative to a great extent. Some evidence supported the court's finding that CGU did not meet its burden of proof, and we will not disturb its judgment. See generally *Liberty Mut. Ins. Co. v. Johnson*, 244 Ga. App. 338, 341 (3) (535 SE2d 511) (2000) (trial court's factual determination not disturbed because some evidence showed that employee was not fully compensated).

2. CGU also contends that OCGA § 34-9-11.1 gives it the right to assert a lien on future benefits, or benefits not yet paid, to Harrison. We do not agree.

As originally enacted in 1920, the Workers' Compensation Act did not allow subrogation of the employer to any portion of an employee's claim against a third party. *K-Mart Apparel Corp. v. Temples*, 260 Ga. 871, 873 (1) (401 SE2d 5) (1991). The Act was amended

in 1922, however, to permit subrogation rights to the employer under certain circumstances. Id. As discussed in *Spengler v. Employers Commercial Union Ins. Co.*, 131 Ga. App. 443, 451 (6) (206 SE2d 693) (1974), under former Code Ann. § 114-403, upon giving certain written notice,

> the person called upon to make such payment shall be subrogated, to the extent of the compensation, medical expenses and/or funeral expenses payable, to all rights arising out of the injury or death which the injured employee . . . shall have against such notified persons, and shall have a lien therefor against the net recovery of any judgment or settlement recovered by the injured employee . . . against any of the persons so notified.

(Punctuation and emphasis omitted.) Subrogation rights conferred by Code Ann. § 114-403 were later abolished by the complete repeal of that statute in 1972. See *Aetna Ins. Co. v. Windsor*, 133 Ga. App. 159 (210 SE2d 373) (1974). These rights were resurrected in 1992 by the enactment of OCGA § 34-9-11.1 (b). But contrary to CGU's argument, the circumstances under which subrogation is permitted under the present statute differ from those authorizing subrogation under prior law.

The previous statute clearly contemplated that an employer/ insurer might recover for benefits not yet paid, as it recited that the employer was subrogated to certain benefits *payable*. The current provision, however, in addition to requiring the employee to be completely compensated before an employer/insurer can enforce its lien, also states that a lien arises when the employer's liability has been fully or partially *paid* and recites that the employer's liability shall not exceed the actual amount of compensation *paid*. We must presume that the legislature was aware of the prior law, which contemplated a lien on benefits not yet paid, and it could have used the same language in the new law, if it so desired. It did not. The omission of language indicating an intent to permit a lien against future benefits "invites the application of the venerable principle of statutory construction expressio unius est exclusio alterius: the express mention of one thing implies the exclusion of another. . . . The omission of any such reference from the Code subsection must be regarded as deliberate." (Citations and punctuation omitted.) *Homebuilders Assn. &c. v. Morris*, 238 Ga. App. 194, 196 (518 SE2d 194) (1999).

We recognize that in *Spengler*, supra, this court recited the general principle that the right of subrogation served to effectuate the purpose of the workers' compensation law at the time by permitting "a means for recouping the employer's loss" and preventing "a double

recovery by the employee." (Punctuation omitted.) Id. at 445 (2). But here, given CGU's failure to present sufficient evidence sustaining its burden of proof, we cannot conclude that our interpretation of OCGA § 34-9-11.1 (b) confers a double recovery on Harrison. Furthermore, our interpretation "comports with the overall purposes of the Act. Although the Workers' Compensation Act is in derogation of common law, it is highly remedial in nature. It must be construed liberally in favor of the claimant in order to accomplish its beneficent purposes." (Citations and punctuation omitted.) *Morris*, supra at 196-197. Accordingly, we conclude that the trial court did not err in finding that the law does not authorize a lien against the settlement proceeds with respect to future benefits paid to Harrison.[3]

We note that *Ga. Star Plumbing v. Bowen*, 225 Ga. App. 379 (484 SE2d 26) (1997), and *Anthem Cas. Ins. Co. v. Murray*, 246 Ga. App. 778 (542 SE2d 171) (2000), relied on by CGU to support its argument that unpaid benefits are subject to a subrogation lien, are not controlling. In fact, in *Bowen* we expressly stated that "[u]nder the plain language of subsection (b) of the statute, a subrogation lien is created only *after* the employer has fully or partially paid the workers' compensation payments due to the employee." (Emphasis supplied.) Id. at 381. In *Anthem*, the insurer filed suit for reimbursement of workers' compensation benefits paid to the injured employee. Summary judgment was granted to the employee on the issue of whether he had been completely compensated for his injuries by a jury verdict against the tortfeasor in the amount of $1.5 million. We reversed, concluding that the evidence was conflicting on the issue, and we remanded for the trial court to "weigh this evidence and make a factual determination as to whether Anthem carried its burden." (Footnote omitted.) Id. at 781 (1). We stated that on "remand, any reimbursement of benefits to which Anthem may be entitled is statutorily limited to the amount of Murray's tort recovery. Put another way, in no event may Anthem recover more than $1.5 million from Murray, no matter how much it pays him in workers' compensation benefits." (Citations omitted.) Id. at 781 (1), n. 15. CGU argues that these remand instructions "all but recognized that an Employer's/Insurer's subrogation lien extends to benefits yet to be paid pursuant to the Workers' Compensation Act."

Here, however, following a bench trial as opposed to ruling on a motion for summary judgment, the trial court weighed the evidence presented by CGU and found it to be lacking. Furthermore, in *Anthem*, the employee admitted that a certain amount would consti-

---

[3] Although CGU argues that the trial court did not make a specific finding in its final order as to whether the lien against the settlement proceeds applies to future benefits, the trial court did state during the hearing that it found no authority for this proposition.

tute " 'a full and complete recovery.' " Id. at 780 (1). Harrison made no such admission here. *Anthem* is thus distinguished from this case, and we simply cannot agree that the instruction in *Anthem* is an explicit recognition that the subrogation provision confers a right on CGU to a lien with respect to as-yet-unpaid benefits. This is not to say that CGU can never assert and pursue recovery on a lien. After benefits have been paid, at which time they are no longer "future" benefits, an employer/insurer should be permitted to assert and seek recovery on a subrogation lien to the extent of the benefits paid. And as discussed above, the employer/insurer must meet the burden of showing full and complete compensation to the employee.

*Judgment affirmed. Eldridge and Ellington, JJ., concur.*

DECIDED MAY 2, 2002 —

*Lowendick, Cuzdey & Ehrmann, Stephen Cuzdey, Frederick J. Conklin, Jr., Marion G. Waters IV*, for appellant.

*Carlock, Copeland, Semler & Stair, Wayne D. McGrew III, Goodman & Goodman, Michael D. Goodman, Freed & Berman, Gary S. Freed, Kenneth A. Hindman*, for appellees.