A04A0991. HARRISON et al. v. CGU INSURANCE COMPANY.
(604 SE2d 615)

BARNES, Judge.

Douglas and Amy Harrison appeal the trial court's order denying their motion to cite CGU Insurance Company for contempt and denying their motion for the award of attorney fees and expenses of litigation under OCGA § 9-15-14. This is the second appearance of this case before us. In the first appeal, *CGU Ins. Co. v. Sabel Indus.*, 255 Ga. App. 236 (564 SE2d 836) (2002), we determined that CGU had no right to a workers' compensation lien against the proceeds of the tort settlement that the Harrisons reached with a tortfeasor.

The Harrisons contend the trial court erred by holding that CGU was not obligated to obey a disbursement order, erred by holding that the trial court lost jurisdiction to enforce the disbursement order once CGU's notice of appeal was filed, and erred by finding that CGU was entitled to disregard the trial court's order to pay the funds from escrow "instanter" because it had filed a notice of appeal. We disagree and affirm.

As stated in the earlier appeal, in February 2000, in the course of his employment, Douglas Harrison was catastrophically injured while driving his vehicle. Subsequently, CGU paid workers' compensation benefits on behalf of Harrison's employer. In October 2000,

Harrison and his wife filed a negligence action against the tortfeasor and his employer. After mediation in April 2001, the Harrisons settled their claims for $4,500,000, with $4,000,000 allocated as a lump-sum payment and $500,000 paid out through an annuity. Before the settlement, CGU gave notice to the parties of its claimed subrogation rights. Later, the Harrisons filed a motion to confirm the settlement, to add CGU as a party defendant, and to dissolve the workers' compensation lien, and CGU filed a motion to intervene, which was subsequently granted. As of June 2001, CGU had paid $212,333.92 in medical expenses, temporary total disability benefits, and permanent partial disability benefits. *CGU Ins. Co. v. Sabel Indus.*, supra, 255 Ga. App. at 237.

After an evidentiary hearing on whether CGU was entitled to recover on its subrogation lien under OCGA § 34-9-11.1, the trial court granted a directed verdict to the Harrisons, finding that CGU did not carry its burden of proving that Douglas Harrison was fully and completely compensated for his injuries. The trial court also found that CGU had not proved which portion of the settlement was attributable to Mrs. Harrison's consortium claim, *CGU Ins. Co. v. Sabel Indus.*, supra, 255 Ga. App. at 237, and dissolved CGU's lien.

CGU appealed, arguing that the trial court erred by finding that CGU had not proven full and complete compensation, erred by requiring it to prove the value of Mrs. Harrison's consortium claim, and erred by directing a verdict because the court found that no evidence was presented on the value of that claim. *CGU Ins. Co. v. Sabel Indus.*, supra, 255 Ga. App. at 237-238.

After CGU filed its notice of appeal, the Harrisons filed motions to cite CGU for contempt because it failed to obey the disbursement order and to hold CGU in contempt until it complies with the court's disbursement order. The Harrisons also moved for an award of attorney fees and expenses of litigation under OCGA § 9-15-14 because CGU's position in refusing to release the money in the escrow account lacked any justification in law and fact and "was substantially frivolous, groundless, and vexatious."

Ultimately, this court affirmed the trial court's ruling because we found that some evidence supported the trial court's finding that CGU had not proven that Douglas Harrison had received full and complete satisfaction, *CGU Ins. Co. v. Sabel Indus.*, supra, 255 Ga. App. at 238-241, and because CGU had no right under OCGA § 34-9-11.1 to assert a lien for future workers' compensation benefits not yet paid to Mr. Harrison. Id. at 241-244.

Following the decision by this court and the remand to the trial court, the trial court considered and denied the Harrisons' motions with the following order:

Plaintiffs made a lump-sum settlement of Douglas Harrison's underlying personal injury claim and Amy Harrison's claim for loss of consortium. . . . On June 19, 2001, this Court granted CGU's Motion to Intervene, and Plaintiffs filed a Motion to Dissolve CGU Insurance Company's ("CGU's") subrogation lien, which CGU asserts under OCGA § 34-9-11.1, having paid out worker's compensation benefits to Plaintiff Douglas Harrison as a result of his injury. An evidentiary hearing was held on June 25, 2001, to determine the enforceability of CGU's lien.

On July 27, 2001, the Court issued an order finding that CGU had not met the burden of proving that Plaintiff Douglas Harrison had been fully and completely compensated by the lump sum settlement. Georgia law does not allow CGU to assert a lien against that portion of the lump sum settlement due to Amy Harrison for her claim of loss of consortium. The Court noted in its July 27, 2001 Order that the lump sum settlement was not divided between the Plaintiffs, such as to allow the Court to determine which portion of the settlement proceeds was intended for Plaintiff Douglas Harrison, and which portion for Amy Harrison.

Having found CGU's evidence to be "woefully deficient" in proving that Plaintiff Douglas Harrison had been fully and completely compensated, the Court dismissed CGU's claim and dissolved CGU's lien, by Order dated July 27, 2001. That Order provided that $212,333.92 of the $1 million being held in escrow remain in the escrow account, in light of CGU's stated intention to file an appeal, and that the remaining $787,660.08 and all accrued interest through the date of the Order be "released instanter" to Plaintiffs and their counsel.[1]

This Court notes that the amount of workers' compensation benefits CGU alleges it paid out to Douglas Harrison, as of the time of filing its Motion to Intervene, was $211,213.92. If Defendant CGU were to lose its argument on appeal that it is entitled to a lien on the lump sum settlement for *future* workers' compensation benefits paid to Plaintiff Douglas

---

[1] The Court notes that this leaves $6.00 of the $1 million originally placed in escrow unaccounted for, with no guidance as to how these numbers were reached in the July 27, 2001, Order (issued by the previous State Court Judge for this Division).

Harrison, the amount left in escrow by this Court's July 27, 2001 Order would nevertheless be sufficient to cover the amount of its lien for benefits *paid* as of the time of its intervention, were it to prevail on that ground.

On August 14, 2001, CGU filed a Notice of Appeal of the Court's July 27, 2001 Order. Plaintiffs then filed, on August 15, 2001, their present Motion for Contempt Citation and to Reduce the Amount in Escrow against intervenor CGU Insurance Company for willfully refusing to release the $787,660.08 designated to be "released instanter" to the Plaintiffs and their counsel by this Court's July 27, 2001 Order. On August 30, 2001, all court costs were paid by CGU. On September 10, 2001, plaintiffs filed the present Motion for Attorneys Fees and Expenses of Litigation. On September 24, 2001, the trial judge informed CGU that its response to Plaintiffs' Motion for Contempt Citation and to Reduce the Amount in Escrow would be due twenty (20) days after the appeal process became final.

The Georgia Court of Appeals affirmed the trial court's ruling on May 2, 2002. [*CGU Ins. Co. v. Sabel Indus.*, supra, 255 Ga. App. 236.] CGU applied to the Georgia Supreme Court for a Writ of Certiorari, but same was denied on September 6, 2002. [Cit.] Prior to the filing of the remittitur by the Court of Appeals on October 24, 2002, CGU filed its response to Plaintiff's Motion for Contempt Citation and to Reduce the Amount in Escrow on October 18, 2002. On November 4, 2002, the trial court signed an order making the decision of the Court of Appeals the judgment of the trial court and entering the same upon the minutes.

In its appeal, CGU challenged not only the Court's written order of July 27, 2001, finding that CGU had failed to prove that Plaintiff Douglas Harrison had been fully and completely compensated, but the Court's oral ruling that CGU was not entitled to a lien on the lump sum settlement for *future* workers' compensation benefits, not yet paid. Were the $211,213.92 already paid by CGU the only amount in controversy, CGU would not have been justified in failing to pay the Plaintiffs and their counsel, "instanter," the $787,660.08 designated to be released, as there would still be enough money left in escrow to cover the benefits already paid by CGU. However, the appeal also addressed the trial court's ruling regarding a possible lien in favor of CGU for *more*

than it had already paid to Plaintiff Douglas Harrison in workers' compensation benefits. The July 27, 2001 Order of the trial court left only enough in the escrow account to cover the funds already paid out by CGU, but did not take into account the funds upon which CGU might have a lien, had they been successful on the appeal as to the issue of future benefits to be paid.

In light of the controversy over CGU's lien on the lump sum settlement for *more* than the benefits already paid, this Court finds that CGU was not required, once the Notice of Appeal was filed and the court costs paid, to release the funds designated by the Court's July 27, 2001 Order, prior to the final disposition of the appeal. While Plaintiffs argue that a supersedeas bond does not divest the trial court of jurisdiction to enforce its orders, the trial court's July 27, 2001 Order was not an order requiring the posting of a supersedeas bond by the appellant. The Order was, in fact, an "Order Granting Plaintiffs' Motion to Dismiss and Dissolving Intervenor CGU's Worker's Compensation Lien."

Neither the caption of the Order, nor the language contained in the Order, indicates that it may properly be considered an order for the posting of a supersedeas bond. Indeed, a supersedeas bond is not required in a civil matter, unless motion for same is made in the trial court by the appellee before or after the appeal is docketed in the appellate court. See OCGA § 5-6-46. In such case, the trial court "shall require that supersedeas bond be given with such surety and in such amount as the court may require, conditioned for the satisfaction of the judgment in full, together with costs, interest, and damages for delay, if for any reason the appeal is dismissed or is found to be frivolous, and to satisfy in full such modification of the judgment and such costs, interest, and damages as the appellate court may award." Id.

In the present case, however, no such motion for supersedeas bond was made by the Plaintiffs. Even if Plaintiffs had made such a motion, the result would have been for the trial court to require Defendants to post a sufficient bond, as indicated in OCGA § 5-6-46. The fact that the Court had previously ordered the Defendant to place $1 million in an interest-bearing escrow account does *not* mean that the subsequent July 27, 2001 Order, dissolving CGU's lien and

attempting to disburse part of the $1 million to Plaintiffs, prior to the resolution of CGU's appeal, constitutes an order for a supersedeas bond.

Although CGU ultimately failed on appeal, this Court finds that CGU's Notice of Appeal and subsequent payment of court costs removed the case from this Court's jurisdiction. Furthermore, the Notice of Appeal and payment of court costs operated as a supersedeas of the enforcement of this Court's July 27, 2001 Order, regardless of whether or not a supersedeas *bond* was posted. *The right to appeal would be meaningless if the Order sought to be appealed was enforceable prior to the disposition of the appeal.* The filing of the Notice of Appeal and payment of costs divested the trial court of the power to enforce its July 27, 2001 Order, as this was the very order being appealed.

In light of the following analysis, Plaintiffs' Motion for Contempt Citation is hereby DENIED. As CGU did, in fact, release all of the funds remaining in the escrow account after the remittitur of the case to this Court, Plaintiffs' Motion to Reduce the Amount in Escrow is now moot.

Plaintiffs also filed, in reliance on OCGA § 9-15-14, a Motion for Attorney's Fees and Expenses of Litigation, seeking attorneys fees and expenses of litigation for CGU's appeal of the issues the Plaintiff argues were not justiciable, and for taking positions that no court could reasonably consider upholding or enforcing. The fact that the Georgia Court of Appeals issued a rather lengthy analysis of the issue, rather than dismiss the claim summarily, belies the Plaintiffs' argument. While CGU was ultimately unsuccessful in its position, the position does not rise, in this Court's opinion, to the level of frivolity or injusticiability required for the recovery of attorney's fees and expenses of litigation required by OCGA § 9-15-14. Therefore, Plaintiff's Motion for Attorneys Fees and Expenses of Litigation is hereby DENIED.

(Bolding deleted and emphasis in original.)

The standard of review for awards under OCGA § 9-15-14 (a) is the "any evidence" rule. Awards under OCGA § 9-15-14 (b) are discretionary and the standard of review is abuse of discretion. *Haggard v. Bd. of Regents &c. of Ga.*, 257 Ga. 524, 527 (4) (c) (360 SE2d 566) (1987). Further, the standard of review of a trial court's ruling on a motion to cite a party for contempt is also the "any

evidence" standard.[2] *In re Orenstein*, 265 Ga. App. 230, 232 (1) (593 SE2d 690) (2004). Consequently, if there is any evidence from which the trial court could have concluded that its order was not violated, we are without power to disturb the judgment absent an abuse of discretion. *Ponder v. Ponder*, 172 Ga. App. 372 (1) (323 SE2d 210) (1984).

Additionally, the Harrisons' supplemental brief concedes that CGU's position in the first appeal regarding its liens was not frivolous, and that "[a] legitimate question [existed] under Georgia law, even though the Court of Appeals ultimately held that CGU's position was incorrect." Instead, they contend that the filing of the notice of appeal did not relieve CGU from obeying the order regarding money in the escrow account. We find this position to be without merit for the reasons stated in the trial court's order. See OCGA § 5-6-46 (a). Therefore, the trial court was not authorized to enforce the disbursement of the funds while the case was on appeal. *Smiway, Inc. v. Dept. of Transp.*, 178 Ga. App. 414, 419 (7) (343 SE2d 497) (1986).

As the findings in the trial court's order on the Harrisons' motions were supported by the evidence and did not constitute an abuse of discretion, the trial court must be affirmed.

*Judgment affirmed. Blackburn, P. J., and Mikell, J., concur.*

DECIDED SEPTEMBER 13, 2004.

*Kenneth A. Hindman*, for appellants.

*Lowendick, Cuzdey, Ehrmann, Wagner & Stine, Stephen Cuzdey, Frederick J. Conklin, Jr., Speed & Seta, Marion G. Waters IV*, for appellee.

---

[2] The distinction between criminal and civil contempt is that criminal contempt imposes unconditional punishment for prior acts of contumacy, whereas civil contempt imposes conditional punishment as a means of coercing future compliance with a prior court order. Attachments for contempt are either civil or criminal, or both. In the former, the attachment, being remedial, is merely to compel obedience to an order requiring the payment of money, or to do some act for the benefit of a party litigant, and where the party ordered fails to comply, not out of disrespect to the court, but for other causes within or without his control. See generally Daniel's Ga. Criminal Trial Practice, § 27-1 (2002). (Citations and punctuation omitted.) *Norred v. Moore*, 263 Ga. App. 516, 517, n. 3 (588 SE2d 301) (2003). In this appeal we are concerned with civil contempt because the Harrisons sought sanctions to force CGU to comply with the disbursement order.