A10A0391, A10A0392. SARAVIA v. MENDOZA (two cases).
(695 SE2d 47)

BLACKBURN, Presiding Judge.

In this child custody dispute, Jose Saravia appeals from two separate orders entered by the trial court. In Case No. A10A0391, he appeals from the trial court's denial of his motion seeking to hold his ex-wife, Lorena Xenia Mendoza, in contempt for her failure to comply with the couple's 2005 divorce decree, which awarded Saravia legal and primary physical custody of the couple's four children. In Case No. A10A0392, Saravia appeals from the trial court's order granting Mendoza's petition for a change in custody and awarding her joint legal and primary physical custody of the children. Saravia asserts the trial court erred in: (1) consolidating the hearing on his motion for contempt with the hearing on Mendoza's petition for change in custody; (2) denying his motion for contempt; (3) hearing Mendoza's custody petition despite her failure to comply with OCGA § 19-9-24 prior to filing the same; and (4) granting the petition for change in custody. Discerning no error, we affirm.

> While we apply a de novo standard of review to any questions of law decided by the trial court, factual findings made after a [hearing] shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. Because the clearly erroneous test is in effect the same standard as the any evidence rule, appellate courts will not disturb fact findings of a trial court if there is any evidence to sustain them.

(Citations and punctuation omitted.) *Lifestyle Home Rentals v. Rahman*.[1]

Viewed in the light most favorable to the trial court's order (*In the Interest of T. S.*;[2] *In re Waitz*[3]), the record shows that Saravia and Mendoza have four children, currently ranging in age from twelve to

---

[1] *Lifestyle Home Rentals v. Rahman*, 290 Ga. App. 585, 585 (660 SE2d 409) (2008).

[2] *In the Interest of T. S.*, 300 Ga. App. 788, 788 (686 SE2d 402) (2009).

[3] *In re Waitz*, 255 Ga. App. 841, 842 (567 SE2d 87) (2002).

seven years old. The couple separated in November 2004, when Saravia drove Mendoza and the children from their home in Georgia and left them with family members in Texas. According to Mendoza, Saravia told her he needed to start a new life and new career in Georgia, and he could not do that with her and the children living there with him. Saravia admitted to withdrawing the children from their schools in Georgia, driving Mendoza and the children to Texas, and leaving them there, even though he knew that Mendoza had no job, no money, and no place to live.

Mendoza filed a child support action against Saravia in Texas in late 2004. Saravia called and begged her to drop the action, but she refused. Shortly thereafter, Saravia made the first in a series of legal maneuvers apparently designed to avoid a court order requiring him to support his children. Specifically, Saravia filed a divorce action against Mendoza in Gwinnett County in early 2005.[4] The June 2005 divorce decree, which Saravia acknowledges he obtained unilaterally, awarded him legal and primary physical custody of the children and required Mendoza to pay him child support of $348 per month. Notably, Saravia never made any attempt to enforce the custody or child support provisions of the divorce decree.

Between November 2004 and the summer of 2008, Saravia visited his children in Texas only twice a year, with each visit lasting between four and seven days. He brought the children to Georgia only once, in the summer of 2006. Although the children were apparently supposed to spend the entire summer with Saravia, he returned them to Texas within three weeks, after one of the children suffered a broken arm. Between the summer of 2008 and the time of the June 2009 hearing in this matter, Saravia saw his children only once, over Memorial Day weekend.[5]

In November 2008, Mendoza filed a second child support action against Saravia in Texas. Saravia responded by filing a contempt motion in Gwinnett County on January 27, 2009, seeking to enforce the custody provisions of the parties' divorce decree, and alleging that Mendoza had failed and refused to return the children to Saravia's custody in violation of that decree. The Texas court thereafter declined to exercise jurisdiction over the child support action, and dismissed the same on March 10, 2009.

---

[4] Although there appears to be some debate as to whether Mendoza was personally served with the divorce action, that issue is not currently before us.

[5] Saravia testified that he had not seen his children because Mendoza refused to allow them to come to Georgia for Thanksgiving. Mendoza disputed this assertion, stating that while she had no objection to the children coming to Georgia, she did object to Saravia's plan to have his brother drive the children from Texas, stating that the brother had hit one of the children on several occasions.

The trial court held a hearing on the contempt motion on March 16, 2009. Although no transcript of that hearing appears in the record, the record does show that, based upon the evidence presented at that time, the trial court deferred ruling on the contempt motion. That evidence included the fact that Mendoza had filed her petition for change of custody on March 12, 2009, four days before the initial contempt hearing. Thus, the trial court advised the parties that it would not rule on the motion for contempt until after the hearing on the custody petition and instructed them to maintain the status quo until that time. The trial court thereafter scheduled the hearing on the custody petition together with the final hearing on the contempt motion for June 2, 2009.

The evidence introduced at the June 2 hearing showed that Mendoza, who has a ninth-grade education, worked part-time as a housekeeper and made no more than minimum wage. She lived with the four Saravia children, her current husband, and her infant child with that husband in a two-bedroom apartment, because the family could not afford anything larger.

Saravia was employed as a paralegal and he lived with his current wife, their infant child, and his wife's young daughter in a five-bedroom home the couple had recently purchased. Between November 2004 and June 2009 Saravia paid child support of between $200 and $400 per month.[6]

The evidence with respect to the children showed that they had an excessive number of tardies (approximately 40) for both the 2006 and 2007 school years. All of the children were struggling in school and two of them had an individual education plan ("IEP") in place, indicating that they had a learning disability. Because of their academic struggles, the three older children had attended summer school every year between 2005 and 2008 and all four children were scheduled to attend summer school in 2009. The mother was involved with the children's education, testifying that she attended parent-teacher conferences, communicated with the children's teachers on a regular basis, and assisted the children with homework daily.

Saravia acknowledged that he had been unaware of the children's academic issues until two or three weeks before the hearing, when he received their school records in response to his discovery requests. Even though he had legal custody of the children, he had never made any effort to obtain copies of their progress reports or report cards, to make any contact with their teachers, or to otherwise

---

[6] We emphasize that Saravia did not pay this amount per child per month. Rather, he paid a total of between $200 and $400 total per month, for all four children.

track the children's academic and social progress. Indeed, Saravia admitted that there was a period of at least two-and-a-half years when he did not even know where his children were enrolled in school.

Following the hearing, the trial court entered two separate orders, one of which denied Saravia's motion for contempt and the other of which granted Mendoza's petition for change of custody.[7] Saravia then filed separate appeals from each of those orders.

## Case No. A10A0391

In Case No. A10A0391, Saravia appeals from the trial court's order denying his motion for contempt.

1. Saravia first claims that the trial court's decision to "consolidate" the motion for contempt with the custody petition and to hear "both matters together" violated the provisions of OCGA § 19-9-23. That statute requires that "any complaint seeking to obtain a change of legal custody of the child ... be brought as a separate action in the county of residence of the legal custodian of the child." OCGA § 19-9-23 (a). Additionally, it prohibits any such complaint from being made as part of a responsive pleading in any action "seeking to enforce a child custody order." OCGA § 19-9-23 (c). The purpose of this statute was "to curtail the practice [of] allowing the noncustodial parent to relitigate custody in his own jurisdiction," i.e., his own county of residence within the State. *Kapur v. Roach*.[8] See also *Pruitt v. Hooks*[9] ("the provisions of [OCGA § 19-9-23] provide venue and personal jurisdiction defenses to those against whom child custody actions are brought"); OCGA § 19-9-21 (a) (1) (stating that the statute was intended, in part, to "[a]void jurisdictional competition and conflict by courts within this state in matters of child custody, which have in the past resulted in the shifting of children from county to county").

Assuming arguendo that this statutory provision applies to out-of-state residents, such as Mendoza,[10] we find that the trial court's decision to defer ruling on the contempt motion until after a

---

[7] The order granting Mendoza's custody petition also required Saravia to pay monthly child support of approximately $1,000.

[8] *Kapur v. Roach*, 272 Ga. 767, 768 (534 SE2d 420) (2000).

[9] *Pruitt v. Hooks*, 163 Ga. App. 892, 894 (296 SE2d 193) (1982).

[10] In her brief, Mendoza argues that this Code section, which is part of the Georgia Child Custody Intrastate Jurisdiction Act (see OCGA § 19-9-20), does not apply to her; instead, she asserts that her case would be governed by the Uniform Child Custody Jurisdiction and Enforcement Act, OCGA § 19-9-40 et seq. See *Upchurch v. Smith*, 281 Ga. 28, 29 (1), n. 1 (635 SE2d 710) (2006) (rejecting the argument that OCGA § 19-9-23 determined venue in a child custody case involving a nonresident parent, "inasmuch as that provision is part of the Georgia Child Custody Intrastate Jurisdiction Act and has no application to out-of-state defendants").

hearing on the custody petition did not violate the same. Where a custody petition is filed as a separate action in the county of the custodial parent's residence, the statute's requirements are satisfied and its purpose is met. There is nothing in either the statutory language or relevant case law that prohibits a court from hearing a properly-filed custody petition together with a related action, such as a motion for contempt. Indeed, such a joint hearing is expressly permitted by OCGA § 9-11-42, which provides "[w]hen actions involving a common question of law or fact are pending before the court, if the parties consent, the court may order a joint hearing or trial of any or all the matters in issue in the actions. . . ." OCGA § 9-11-42 (a).

According to statements made by Saravia's own counsel at the June 2 hearing, the trial court had informed the parties at the March 16 contempt hearing that it was going to defer ruling on the contempt motion until after the hearing on the custody petition. In an order dated March 27, 2009, in which it gave the parties notice of the June 2 hearing, the trial court stated that it would be conducting "a final hearing on both the contempt and the [custody] modification matters." Saravia, however, filed no written objection to the court's statement that it would be hearing the matters together. And, the transcript of the June 2 hearing shows that Saravia's counsel offered no objection to the matters being heard together. Given the absence of any evidence that Saravia objected to the trial court's decision to consider the contempt motion together with the custody petition, his consent is inferred. See *Steve A. Martin Agency, Inc. v. Planters-FIRST Corp.*[11] ("[t]he burden is on the party alleging error to show it affirmatively by the record and when the burden is not met, the judgment complained of is assumed to be correct and must be affirmed") (punctuation omitted).

Furthermore, having acquiesced to the trial court's decision to hold a joint hearing on the contempt motion and the custody petition, Saravia cannot complain of this decision on appeal. "[A] party may waive the provisions of OCGA § 19-9-23 by [his] actions or words" (*Bailey v. Bailey*[12]), and "[i]t is well established that one cannot complain of a judgment, order, or ruling that [his] own procedure or conduct procured or aided in causing." (Punctuation omitted). *Timmons v. Cook.*[13]

2. Saravia next asserts that the trial court erred in denying his contempt motion because there was "ample evidence" that Mendoza

---

[11] *Steve A. Martin Agency, Inc. v. PlantersFIRST Corp.*, 297 Ga. App. 780, 784 (2) (678 SE2d 186) (2009).

[12] *Bailey v. Bailey*, 283 Ga. App. 361, 363 (641 SE2d 580) (2007).

[13] *Timmons v. Cook*, 287 Ga. App. 712, 713 (1) (652 SE2d 604) (2007).

was in violation of the divorce decree. This argument, however, fails to acknowledge either the legal basis for a contempt order or the appropriate standard of appellate review.

"The essence of civil contempt . . . is willful disobedience of a prior court order." *Pate v. Pate*.[14] In his brief, Saravia fails to explain how his ex-wife's conduct was wilful, and we see no evidence of wilfulness in the record before us. Rather, Mendoza's testimony at the June 2 hearing established that Saravia had never asked her to surrender primary physical custody of the children to him, either before or after he filed his contempt motion. To the extent that Saravia's testimony conflicted with that of his ex-wife, it was for the trial court to determine credibility. *Green v. Krebs*.[15] The trial court apparently chose to credit the testimony of Mendoza, and that testimony supported the conclusion that any violation by Mendoza of the divorce decree was not wilful. Accordingly, the trial court did not abuse its discretion in denying Saravia's contempt motion. See *Killingsworth v. Killingsworth*[16] ("[t]rial courts have broad discretion in ruling on a motion for contempt, and [such a] ruling will be affirmed on appeal if there is any evidence in the record to support it") (citation and punctuation omitted).

## Case No. A10A0392

In this case, Saravia appeals from the trial court's order granting Mendoza's petition for a change of custody.

3. Saravia asserts that the trial court's consideration of Mendoza's custody petition violated OCGA § 19-9-24, which provides that a physical custodian "shall not be allowed" to maintain an action for change of custody "so long as custody of the child is withheld from the legal custodian." As the discussion in Division 2, supra, demonstrates, however, the evidence did not establish that Mendoza withheld custody of the children from Saravia. Rather, that evidence supported the conclusion that Saravia never sought to enforce his right to physical custody. Accordingly, OCGA § 19-9-24 did not bar the trial court from considering Mendoza's custody petition. See *Looney v. Looney*.[17]

Moreover, "it is well established that this Court cannot hear arguments raised for the first time on appeal." (Punctuation omitted.) *Steve A. Martin Agency*, supra, 297 Ga. App. at 784 (2). Here, the record shows that Saravia did not raise this issue below, either by

---

[14] *Pate v. Pate*, 280 Ga. 796, 798 (3) (631 SE2d 103) (2006).

[15] *Green v. Krebs*, 245 Ga. App. 756, 756 (1) (538 SE2d 832) (2000).

[16] *Killingsworth v. Killingsworth*, 286 Ga. 234, 237 (3) (686 SE2d 640) (2009).

[17] *Looney v. Looney*, 183 Ga. App. 233, 234 (358 SE2d 642) (1987).

way of a motion to dismiss the petition or by otherwise making an objection during the hearing on the same. Saravia, therefore, has waived this claim of error. Id. See also *Bush v. State*[18] (appellate courts are for the correction of errors of law made by the trial courts, and where the trial court has not ruled on an issue, there is no ruling to review for legal error).

4. We find no merit in Saravia's final enumeration, that the trial court erred in granting Mendoza's custody petition.

"A petition to change child custody should be granted only if the trial court finds that there has been a material change of condition affecting the welfare of the child since the last custody award. If there has been such a change, then the court should base its new custody decision on the best interest of the child." (Punctuation omitted.) *In the Interest of T. S.*, supra, 300 Ga. App. at 790 (2). "Whether there are changed conditions affecting the welfare of the child which will warrant changing custody is a fact question, and the trial court's decision will be upheld if there is reasonable evidence to support [it]." *Green*, supra, 245 Ga. App. at 756 (1). Moreover, "[w]hen reviewing a child custody decision, this Court views the evidence presented in the light most favorable to upholding the trial court's order." (Punctuation omitted). *In the Interest of T. S.*, supra, 300 Ga. App. at 788.

The evidence of changed conditions presented here included the fact that Saravia had failed to adequately provide for his children financially, despite his apparent ability to do so; that Saravia had been, by his own admission, uninvolved in his children's lives since at least November 2004; that after being awarded custody of the children, Saravia did not attempt to enforce that order for approximately four years; that Saravia's apparent motivation for seeking custody during the divorce proceedings was to avoid court-ordered child support payments; and that Saravia sought to enforce his custodial rights only after his ex-wife filed a child support action against him in Texas. This evidence was sufficient to support both the trial court's finding of a material change in conditions affecting the welfare of the children and its finding that a change in custody was in the children's best interests. See, e.g., *Green*, supra, 245 Ga. App. at 759 (1); OCGA § 19-9-3 (a) (3) (listing factors to be considered in determining the best interest of a child in a custody proceeding).

For the reasons set forth above, we affirm the orders entered by the trial court in Case Nos. A10A0391 and A10A0392.

*Judgments affirmed. Barnes and Bernes, JJ., concur.*

---

[18] *Bush v. State,* 273 Ga. 861 (548 SE2d 302) (2001).

DECIDED MARCH 31, 2010 —
RECONSIDERATION DENIED APRIL 14, 2010.

*Greer, Klosik, Daugherty & Swank, John F. Daugherty*, for appellant.

*Brown & Gill, Angela B. Dillon, Laura J. Friedman*, for appellee.