A11A2364. KREMER v. TEA PARTY PATRIOTS, INC.
(724 SE2d 466)

ADAMS, Judge.

Amy Kremer appeals the trial court's order finding her in contempt of a consent order entered in a declaratory judgment action filed by Tea Party Patriots, Inc. ("TPP").

> [T]he standard of review of a trial court's ruling on a motion to cite a party for contempt is . . . the "any evidence" standard. Consequently, if there is any evidence from which the trial court could have concluded that its order [was or] was not violated, we are without power to disturb the judgment absent an abuse of discretion.

(Citations and footnote omitted.) *Harrison v. CGU Ins. Co.*, 269 Ga. App. 549, 554-555 (604 SE2d 615) (2004).

The underlying dispute arose among the founders of TPP, a nonprofit "grassroots movement of Americans who favor free market economics, fiscal responsibility, and limited government." TPP filed the declaratory judgment action against Kremer to determine ownership of the "Tea Party Patriots" trademark and various

---

associated websites and internet accounts (collectively referred to herein as "the Intellectual Property"). Kremer counterclaimed alleging claims for misappropriation and conversion of the Intellectual Property, libel, slander, unjust enrichment and punitive damages. After the trial court entered an interlocutory injunction against Kremer, the parties reached an agreement regarding the use of the Intellectual Property pending the resolution of the lawsuit. The trial court entered a consent order memorializing this agreement on December 9, 2009 (the "Consent Order").

That order provides in pertinent part:

> The term "Intellectual Property," as used in this Consent Order, means collectively: (i) the TEA PARTY PATRIOTS trademark ("the Mark"), and (ii) the Websites identified in the Complaint (i.e., www.teapartypatriots.org, (both the website and the domain name); the Tea Party Patriots Ning social networking site; accounts with Google Groups, Blogtalkradio, YouTube, and Ustream; and other associated websites and Internet accounts that carry on TPP's activities).
>
> * * * * * *
>
> After due consideration of this Consent Order, the Court ORDERS as follows:
>
> Until further order of this Court, [Kremer], her agents, employees, attorneys, and those persons acting in concert with defendant or at her direction, are enjoined and restrained as follows:
>
> (1) [Kremer] shall not interfere in any way with TPP's exercise of control over or use of the Intellectual Property. However, this does not prohibit [Kremer] from opposing or contesting TPP's application for trademark protection regarding the Mark;
>
> (2) TPP currently has administrative control of most of the Websites. [Kremer] shall work in good faith with TPP to take all necessary steps to deliver administrative control of the remaining Websites (including the Google Groups account) to TPP within two (2) business days of the entry of this Order. Thereafter, TPP will retain administrative control of the Websites, and [Kremer] promptly will cooperate as necessary for the duration of this Consent Order for TPP to maintain administrative control of the same;
>
> (3) [Kremer] shall not hold herself out as having any current position with TPP or as speaking on behalf of TPP in any way;

(4) [Kremer] shall not use any of the Websites as part of her title or signature block. [Kremer] shall not use TPP's name in any way that implies current affiliation with TPP. For example, to the extent [Kremer] identifies herself as having been a co-founder of TPP, she will also state equally prominently that she has no current affiliation with TPP; . . .

Subsequently, on March 17, 2011, TPP filed a "Motion for Contempt Hearing," alleging that Kremer failed to deliver administrative control of the remaining websites to TPP as required under the Consent Order and further that she continued to identify herself as a co-founder of TPP without any statement that she had no current TPP affiliation.

At the evidentiary hearing on the motion, Debbie Dooley, a TPP official and member of the board of directors, testified that Kremer created the Tea Party Patriots Google Group in March or April 2009 to provide a means of communication for the members of the group. Dooley was named as an administrator of the group, but Kremer retained the designation as the group's "owner." Although Dooley is an administrator and has access to the site, she said that the owner has "super access." Any questions regarding the site are filtered through the owner. In January 2011, when Dooley and other TPP members attempted to log onto the TPP Google Group site, they received a message stating that "[t]he owner of the group has banned you from this group." Dooley had no direct knowledge as to who blocked her access to the group and could only "speculate" that Kremer had done so based upon the message she received. After TPP raised the issue with Kremer's attorney, Dooley's status as manager was reinstated, but her status was changed to require that any comments she posted be approved by the owner or another administrator. Later that month, the name of the site was changed from "Tea Party Patriots" Google Group to "Patriotville." This change resulted in confusion and resulted in TPP receiving criticism on its own site.

Dooley, who also is a national coordinator for Georgia Tea Party Patriots ("GTPP"), testified that GTPP is a subsidiary of TPP, the national group, and helps to coordinate the TPP organizers in Georgia. GTPP has a separate Google Group owned by Kremer. TPP has no control over that Google Group, and Dooley and the other TPP officials are not administrators of that group.

Lee Martin, the husband of TPP official Jenny Beth Martin, testified that he searched Kremer on the internet and discovered her biography posted on several websites. He identified for the record

Kremer's biographies as they appeared on the TeaPartyExpress.TV,[1] InnovatetoMotivate.com, and SpeakersAccess.com websites. These biographies each list Kremer as a founder of TPP, but none of them specifically states that she is no longer affiliated with the organization.

Kremer testified that at the time the Consent Order was entered, three TPP members already were administrators of the TPP Google Group: Jenny Beth Martin, Mark Meckler and Rob Neppell. Kremer stated that she accessed the TPP Google Group only one time after the entry of the order and that was on the advice of her attorney. After Kremer and her attorney learned that a third party, Rob Guida, had removed Jenny Beth Martin and Mark Meckler as administrators, the attorney advised Kremer to access the website to reinstate Martin and Meckler and to remove Guida in order to comply with the Consent Order. Kremer stated that Martin had added Guida as an administrator of the group in November 2009. She said that she never removed Dooley, Martin or any TPP official, other than Guida, as administrators of the TPP Google Group. Kremer stated that she wanted to retain ownership of the TPP Google Groups pending the outcome of the declaratory judgment action, but contended that she had already conceded administrative control of those groups to TPP.

Kremer also denied that she had authorized the posting of her biography on the TeaPartyExpress.TV website, nor had she provided the information used on the website. She stated that TeaPartyExpress.TV was a completely separate entity from Tea Party Express, of which she is chairman. Kremer also identified a biography in a brochure for the Council of National Policy, which indicated that she had been a founder of TPP, but did not expressly state that she was no longer affiliated with TPP. Kremer stated that it appeared that the organization had edited the biography she had provided them. She could not recall what information she had sent the council, but she explained that everyone who was involved in the "movement" knew that she was no longer affiliated with TPP and that she is the chairman of Tea Party Express. She said that the two apparently competing organizations are known to be separate in the media and there is no "confusion . . . where my allegiance is and what organization I'm affiliated with." Kremer also explained that because she started the TPP Google Group, Google automatically calls her the "owner" of the group.

The trial court found Kremer in contempt at the hearing, noting

---

[1] Martin testified that Tea Party Express "is effectively a competing group that competes against Tea Party Patriots."

that "[s]he's trying to straddle a very, very fine line but she's fallen over it." The judge indicated that she had violated the provision of the consent order requiring that she deliver administrative control of the websites to TPP when she blocked or removed individuals as administrators of the TPP Google Group. The trial court indicated, however, that it would not move the ownership of the Google Groups pending the resolution of the lawsuit. Nevertheless, he instructed that she remove herself as a member of any such groups. He also found that she had violated the provision requiring her to clearly state that she no longer had affiliation with the TPP and instructed her to correct and notify others to amend her internet biographies to reflect this fact.

Following this hearing, the trial court issued an order (the "Contempt Order") finding Kremer in contempt and ordering her:

> A. To immediately provide administrative control to TPP of the Google Groups accounts for Tea Party Patriots and Georgia Tea Party Patriots, and all other websites as identified in the Consent Order, in a manner that allows TPP unfettered discretion regarding whom to include in and whom to exclude from said groups;
>
> B. To immediately remove herself from being listed in the aforesaid groups and websites; and
>
> C. To correct the information that she has distributed to the public to reflect the fact that she has no current affiliation with TPP, including notifying all organizations listing her background or credentials to so amend all information in their files or distributed to the public. Defendant Amy Kremer is directed to take all necessary steps related to such correction within 20 days following the date of this order, and in the future as it is brought to her attention.

The order also noted that it made no finding as to "who is the legal owner of the Google Groups, or any other matter that is at issue in this trial." Kremer subsequently filed an emergency motion for reconsideration of the Contempt Order,[2] but she filed her notice of appeal before the trial court ruled on the motion.

---

[2] Kremer filed two affidavits in support of her motion for reconsideration, and she cites to these affidavits on appeal. But the trial court did not have this evidence when it issued the Contempt Order, which is the subject of this appeal. In fact, Kremer filed the appeal before the trial court had the opportunity to consider her motion for reconsideration and the accompanying affidavits. Accordingly, we cannot consider the affidavits on appeal. See generally *Demetrios v. State,* 246 Ga. App. 506, 510 (3), n. 14 (541 SE2d 83) (2000) ("It is an ancient and honored tenet of law that we do not take evidence from the briefs of parties, we do not get

1. Kremer asserts that the trial court erred in holding her in contempt on the basis that she had not taken all the necessary steps to deliver administrative control of the enumerated websites to TPP. "The essence of civil contempt . . . is willful disobedience of a prior court order." (Punctuation omitted.) *Saravia v. Mendoza*, 303 Ga. App. 758, 763 (2) (695 SE2d 47) (2010). Kremer argues that she did not wilfully disobey the Consent Order and that the TPP actually had administrative control of the websites at the time of the hearing.

The Consent Order directed Kremer to "work in good faith with TPP to take all necessary steps to deliver administrative control of the remaining Websites (including Google Group accounts) to TPP." We agree with Kremer that the set-up of the Google Group accounts and the terminology employed by Google in managing the accounts creates some ambiguity in implementing the Consent Order. Although the trial court has consistently held that Kremer may remain as "owner" of the Google Groups, that position carries with it certain inherent administrative powers over the site. Nevertheless, the consent order explicitly stated that Kremer was not to "interfere in any way with TPP's exercise of control over the Intellectual Property" including the Google Groups. Thus while Kremer's position as owner of the site does not in and of itself violate the consent order, it is clear that any exercise of the position's inherent administrative powers would be a violation.

And the evidence at the hearing supported a finding that Kremer had exercised those powers by blocking members from the TPP Google Group. The message Dooley received in January 2011 indicated that "the owner" had blocked her access to the site, and it is undisputed that Google considers Kremer to be the owner. Moreover, Kremer admitted that she had blocked another individual from the site. This evidence supports the trial court's finding that Kremer had intentionally violated the Consent Order. While another explanation may exist for the message and for Kremer's actions, she failed to present any evidence of such an explanation for the trial court's consideration at the contempt hearing. Thus, because there is some evidence to support the trial court's order on this point, we find no abuse of discretion.

2. Kremer also argues that the trial court abused its discretion in ordering her to turn over administrative control of the "Georgia Tea Party Patriots" Google Group to TPP. She contends that GTPP is not affiliated with TPP and thus was not a part of the original Consent Order.

The Consent Order, however, defines the Intellectual Property at

---

evidence from outside the record, and we do not accept assertions of fact or evidence which were not before the trial court. [Cit.]").

issue to include multiple "accounts with Google Groups . . . ; and other associated websites and Internet accounts that carry on TPP activities." Dooley testified that GTPP is a subsidiary of TPP that coordinates TPP efforts in Georgia. She stated that TPP had not been given access to the GTPP Google Groups account. Kremer presented no evidence to counter this testimony. We cannot say, therefore, that the trial court abused its discretion in concluding, based upon the evidence, that the GTPP Google Group account was one of the Google Groups and/or an associated internet account that carries on TPP activities covered by the Consent Order.

3. Kremer further argues that the trial court abused its discretion in finding her in contempt on the basis that she used TPP's name in ways to imply current affiliation. To the contrary, she contends that the evidence of her biographies produced by TPP at the hearing made it clear that any TPP affiliation was part of her past activities. And she notes that she has no control over third-party websites. Thus, she contends that no evidence existed of her intentional disobedience of the Consent Order in this regard.

But the Consent Order clearly states that "to the extent [Kremer] identifies herself as having been a co-founder of TPP, she will also state equally prominently that she has no current affiliation with TPP." And Kremer admitted at the hearing that she had provided a biography to the Council of National Policy, which the organization included, in edited form, in a brochure prepared for a Fall 2010 conference. That biography indicates that Kremer, inter alia, was "founder, Tea Party Patriots," with no mention that she had no current affiliation with TPP. When asked whether the biography she had sent the council had included a statement that she was no longer affiliated with TPP, Kremer stated that she could not "recall exactly what I sent them," only that everything she sent out was as chairman of Tea Party Express and "everybody knows that that is my affiliation, that I am the chairman of Tea Party Express." Thus, Kremer never testified that she included the required disclaimer of TPP affiliation, but instead she relied upon her view that it was common knowledge that TPP and Tea Party Express were two separate organizations to avoid any confusion regarding her current affiliations.

We find that this evidence supported a finding that Kremer had intentionally violated the Consent Order by failing to ensure that a disclaimer of any current affiliation with TPP appeared equally prominently with her claimed position as a TPP founder in the information she supplied to the council. That one violation was sufficient to support the trial court's finding of contempt, without regard to the other third-party organizations listing her biography. Nevertheless, the trial court properly required that she notify those

organizations that they needed to amend her biography to reflect her lack of affiliation with TPP. Accordingly, we find no abuse of discretion.

*Judgment affirmed. Barnes, P. J., and Blackwell, J., concur.*

DECIDED FEBRUARY 29, 2012.

*Hall, Booth, Smith & Slover, Kevin A. Leipow*, for appellant.

*Taylor, English & Duma, Deborah A. Ausburn, Amanda G. Hyland*, for appellee.