**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and MCMILLIAN, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 10, 2014**

# In the Court of Appeals of Georgia

A14A0308, A14A0309. ANSELL v. ANSELL; and vice versa.

PHIPPS, Chief Judge.

These appeals are related to a child custody dispute. In Case No. A14A0308, the father challenges that portion of a child custody order requiring him, over his objection, to cooperate with the mother in obtaining a passport for their minor child. The father also contends that the trial court erred by failing to award him attorney fees in his successful contempt action against the mother. In Case No. A14A0309, the mother filed a cross-appeal, challenging the trial court's finding that she was in contempt of court.

For the reasons that follow, in Case No. A14A0308, we affirm the judgment of the trial court as to the denial of the father's request for attorney fees, and in Case No. A14A0309, we affirm the judgment of the trial court as to the finding that the

mother was in contempt of court. However, in Case No. A14A0308, we vacate the judgment insofar as it requires the father to execute documents consenting to the issuance of a passport for the minor child; as to that issue, we remand the case for the trial court to reconsider its grant of relief to the mother in accordance with certain federal regulations which require no action by the father.

The relevant facts of this case are that Seth and Anna Ansell divorced in 2007, and have one child, born in June 2004. In the divorce, the trial court awarded the parents "joint legal custody" of the child; the mother was awarded primary physical custody. In 2011, the father filed a "Motion for Contempt and Complaint for Modification of Custody"; he also sought attorney fees for bringing the contempt action. The mother answered and filed a counterclaim for contempt and for modification, seeking, among other things, an order limiting the child's travel outside the United States until the child obtained a valid U. S. passport, because her old passport had expired.

After a hearing, the trial court entered an order in which it: (1) found the mother to be in contempt, which could be purged by payment of a fine; (2) denied the father's claim for attorney fees; (3) increased the father's visitation; and (4) required

the father to cooperate with the mother in executing the necessary documents to obtain a passport for the child.

*Case No. A14A0308*

1. The father contends that the trial court erred in requiring him to cooperate with the mother in obtaining a passport for their minor child.[1]

In her counterclaim, the mother pointed out that in a prior modification action, the trial court had ordered that the child's passport be "in the possession of the parent with whom the child is physically present." At the hearing, the mother informed the court that the child's passport had expired, and that she sought to renew it so that the child could travel internationally, as she had in the past. The mother asked the trial court to order the father to comply with the passport application process, which required him to consent to the issuance of the passport. The father testified that he knew that the mother was from Russia, that the child had previously traveled to Russia, and that the child's passport had expired. However, the father testified that

---

[1] Although an error enumerated by the father is that the trial court's order requiring him to "consent to a passport application for the parties' child is preempted by federal law and regulation," the father failed to identify any state law preempted by federal law and regulations upon which he relies on appeal. Notwithstanding, the father stated that the gravamen of his complaint is "whether the trial court has authority to force his consent."

3

he objected to renewing the child's passport, and that he would not cooperate in renewing the child's passport, stating that he "believe[d] the U. S. government gives both parents that discretion."

Neither party presented to the court any legal authority either permitting or prohibiting the court from granting the mother's request regarding the passport; and the trial court cited none in its order granting the mother's request, providing: "The Father shall cooperate with the Mother in executing the necessary documents to obtain a U. S. passport for [the child]. The Father shall execute and return to the Mother the necessary forms, properly executed, within 10 days of receipt of the same."

On appeal, the father correctly argues that because he has joint legal custody of the child, federal regulations governing the issuance of passports to minors require his consent to the issuance of the child's passport,[2] and, he asserts, "forced consent is not consent at all." In supporting the trial court's order, the mother points out that the federal regulations upon which the father relies, specifically 22 CFR § 51.28 (a) (3) (ii) (E), in fact, authorized the trial court to issue an order permitting the mother

---

[2] See 22 CFR § 51.28 (a).

to obtain a passport for the minor child without the father's written consent,[3] and that "[d]uring the trial, neither party reviewed or discussed the federal regulation with the court. Had the parties reviewed the regulation prior to the issuance of an order, the court's intent could have been carried out by expressly authorizing [the mother] to obtain a passport for the child without the consent of the [father]." Without citing any legal authority permitting the trial court to rule as it did, the mother asserts that the trial court's decision to order the father to cooperate in obtaining a passport for the child was supported by the evidence, and that, therefore, the trial court did not abuse its discretion.[4]

---

[3] See 22 CFR § 51.28 (a) (3) (ii) (G) ("An order of a court of competent jurisdiction providing for joint legal custody . . . will be interpreted as requiring the permission of both parents . . . ."); but see 22 CFR § 51.28 (a) (3) (i) (ii) (E), providing that "A passport application may be executed on behalf of a minor under age 16 by only one parent or legal guardian if such person provides: (i) A notarized written statement or affidavit from the non-applying parent or legal guardian, if applicable, consenting to the issuance of the passport; or (ii) Documentary evidence that such person is the sole parent or has sole custody of the minor. Such evidence includes, but is not limited to, . . . [a]n order of a court of competent jurisdiction . . . specifically authorizing the applying parent or legal guardian to obtain a passport for the minor, regardless of custodial arrangements.").

[4] See OCGA § 19-9-5 (c) ("In his or her judgment, the judge may supplement the [custody] agreement on issues not covered by such agreement."); *Daniel v. Daniel*, 250 Ga. App. 482, 484-485 (2) (552 SE2d 479) (2001) (a "best interest of the child" standard is applicable in a change of custody action after there has been a showing of a change in condition materially affecting the child; the trial court's

5

As pointed out by the mother, the parties did not discuss in the trial court the federal regulations they discuss on appeal. We have found no Georgia law expressly granting a trial court authority to require a parent to execute passport documents for a minor child, when that parent objects to giving consent. And we decline to answer the question whether Georgia law impliedly grants a trial court authority to do so when, as the parties correctly recognize in their appellate briefs, the issuance of a passport to a minor child is a matter governed by federal law;[5] and the record in this

decision will not be overturned absent abuse of discretion); OCGA § 19-9-3 (b) ("In any case in which a judgment awarding the custody of a child has been entered, on the motion of any party or on the motion of the judge, that portion of the judgment effecting visitation rights between the parties and their child or parenting time may be subject to review and modification or alteration without the necessity of any showing of a change in any material conditions and circumstances of either party or the child, provided that the review and modification or alteration shall not be had more often than once in each two-year period following the date of entry of the judgment."); *Gildar v. Gildar*, 309 Ga. App. 730, 731-732 (710 SE2d 913) (2011) (applying abuse of discretion standard to trial court's decision made pursuant to OCGA § 19-9-3 (b)).

[5] See 22 CFR 51.20 (a) ("An application for a passport, a replacement passport, extra visa pages, or other passport related service must be completed using the forms the Department prescribes."); 22 CFR 51.1 (a) ("Department means the United States Department of State."); 22 CFR 51.5 ("(a) A passport authorizing officer may adjudicate applications and authorize the issuance of passports. (b) A passport authorizing officer will examine the passport application and all documents, photographs and statements submitted in support of the application in accordance with guidance issued by the Department."); 22 CFR 51.1 (h) ("Passport authorizing officer means a U.S. citizen employee who is authorized by the Department to

6

case does not reflect that the trial court considered federal regulations expressly recognizing a court order as a means by which a parent may obtain a passport for a minor child if the parent is unable to obtain a notarized written statement or affidavit of consent by the other joint custodial parent.[6]

Accordingly, we vacate the trial court's judgment insofar as it orders the father to execute documents necessary for the mother to obtain a passport for the child, and we remand the case for the trial court to reconsider its grant of relief to the mother in accordance with federal regulations which would require no action by the father.[7]

---

approve the issuance of passports."); 22 CFR 51.7 (a) ("A passport at all times remains the property of the United States and must be returned to the U.S. Government upon demand."); 22 CFR 51.28, supra (governing the issuance of passports to minors).

[6] See 22 CFR § 51.28 (a) (3) (i) (ii) (E).

[7] See generally *Cooper/T. Smith Stevedoring Co. v. Ga. Ports Authority*, 301 Ga. App. 62, 64 (686 SE2d 844) (2009) (where trial court and the parties applied only state law to a maritime contract without consideration of federal maritime law, appellate court vacated trial court's ruling on motions for partial summary judgment and remanded case to trial court with direction that the motions be reconsidered to determine the application of pertinent federal and state law); *Adage, Inc. v. Bank of America, N.A.*, 267 Ga. App. 877, 878 (1) (600 SE2d 829) (2004) (where federal law rather than Georgia law controlled issue, and trial court's order showed that it applied Georgia law and failed to apply the controlling legal standards set forth in the provisions of the pertinent federal law, appellate court reversed trial court's orders and remanded the case with directions that issue be reconsidered in light of the provisions of the federal law).

2. The father contends that the trial court abused its discretion by failing to award him attorney fees upon finding the mother in contempt of court. He points out that this was the second time that the trial court found the mother in contempt of court for failing to follow its orders; and he argues that instead of permitting the mother to purge the contempt by paying a fine, the trial court should have ordered the mother to pay the attorney fees he incurred for bringing the contempt claim. The father also asserts that the trial court failed to make requisite findings of fact. We disagree.

"Georgia appellate courts generally apply an abuse of discretion standard in cases involving a claim of error in the decision to award or deny attorney fees."[8] "Generally, an award of attorney fees is not available in Georgia unless authorized by statute or contract."[9]

In this case, the trial court's order does not specify any statutory basis for its decision to deny attorney fees, and the father did not specify in his motion or at the hearing any statute pursuant to which he sought attorney fees. But the father argues in his appellate brief that he was entitled to attorney fees pursuant to OCGA § 19-6-

---

[8] *Nesbit v. Nesbit*, 295 Ga. App. 763 (673 SE2d 272) (2009) (citation and punctuation omitted).

[9] *Ward v. Ward*, 289 Ga. 250, 251-252 (2) (710 SE2d 555) (2011) (citation and punctuation omitted); *Woods v. Hall*, 315 Ga. App. 93, 97 (2) (726 SE2d 596) (2012).

2.[10] Even if this court presumes that the trial court denied the father's request for attorney fees pursuant to OCGA § 19-6-2,[11] the father has shown no abuse of discretion. The purpose of an award of attorney fees pursuant to OCGA § 19-6-2 is to "ensure effective representation of both spouses so that all issues can be fully and fairly resolved."[12] "[A]n award of attorney fees pursuant to [OCGA] § 19-6-2 is not predicated upon a finding of misconduct of a party."[13]

---

[10] See *Hunter v. Hunter*, 289 Ga. 9, 10 (2) (709 SE2d 263) (2011) (appellate court presumed that attorney fees award was made pursuant to OCGA § 19-6-2 where trial court's order did not specify the statute pursuant to which it had considered an award of attorney fees, neither party sought attorney fees pursuant to OCGA § 9-15-14, and the record did not show that the trial court had considered OCGA § 9-15-14); *Moore v. Moore*, 307 Ga. App. 889 (2), n. 1 (706 SE2d 465) (2011) (where the trial court's brief order did not specify the basis for the award of attorney fees, but appellee indicated that he had sought attorney fees pursuant to OCGA § 9-15-14, case was remanded with direction that the trial court make express findings of fact and conclusions of law as to the statutory basis for an award of attorney fees or vacate its order).

[11] See generally *Hunter*, supra; *Dallas v. Flying J, Inc.*, 279 Ga. App. 786, 791 (3) (632 SE2d 389) (2006) (appellant did not specify the statutory provision through which he had requested attorney fees, and appellate court presumed statutory basis upon which appellant had sought award of attorney fees).

[12] *Wood v. Wood*, 283 Ga. 8, 11 (6) (655 SE2d 611) (2008) (citation and punctuation omitted); see *Padilla v. Padilla*, 282 Ga. 273, 274-275 (1) (646 SE2d 672) (2007).

[13] *Moon v. Moon*, 277 Ga. 375, 378 (6), n. 4 (589 SE2d 76) (2003) (citation omitted); *Findley v. Findley*, 280 Ga. 454, 463 (2) (629 SE2d 222) (2006).

9

The father has failed to demonstrate that he is entitled to have this court decide the merits of any objection he has regarding the trial court's judgment insofar as it requires the mother to act to purge herself of contempt.[14] To the extent the father claims that the trial court abused its discretion in failing to make "proper factual findings," none of the cases upon which the father relies requires the trial court to make factual findings when it did not award attorney fees.[15] The cases, however, do

---

[14] See *Sherman v. City of Atlanta*, 293 Ga. 169, 172 (2) (744 SE2d 689) (2013) ("standing is in essence the question of . . . whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues, and litigants must establish their standing to raise issues before they are entitled to have a court adjudicate those issues") (citations and punctuation omitted); *Dept. of Human Resources v. Allison*, 276 Ga. 175, 178 (575 SE2d 876) (2003) ("[t]he burden of proving the interest necessary to demonstrate a particular party's standing is ordinarily placed on that party"); *Travelers Indem. Co. v. Cumbie*, 128 Ga. App. 723, 726 (3) (197 SE2d 783) (1973) ("only one who has been harmed is in position to complain of an error").

[15] See *Hunter*, supra 11 (2) (where the transcript of the final hearing established that the trial court properly considered the relative financial positions of the parties, appellate court could not say that the trial court manifestly or flagrantly abused its discretion in denying attorney fees to ex-wife); *Holloway v. Holloway*, 288 Ga. 147, 150 (2) (702 SE2d 132) (2010) (where the trial court ordered wife to pay attorney fees to husband without findings of fact and without any cogent evidence of the work performed by husband's counsel and the nature thereof, the award of attorney fees was reversed); *Sponsler v. Sponsler*, 287 Ga. 725, 727-728 (2) (699 SE2d 22) (2010) (no abuse of the trial court's sound discretion in its denial of attorney fees to husband where the record and the transcript of the final hearing established that the trial court had properly considered the relative financial positions of the parties).

demonstrate that a trial court is required to consider the relative financial positions of the parties; and in this case, the father concedes that "the [trial] court noted that both parties submitted financial affidavits."[16] Accordingly, the father has failed to demonstrate that the trial court abused its discretion in its decision to deny attorney fees.[17]

*Case No. A14A0309*

3. The mother contends that the trial court erred by finding her in contempt of court as it pertains to making the child available for webcam and telephone communications, and for arriving late to the airport for visitation exchanges.

In the father's motion for contempt (and complaint for modification of custody), he asked the trial court to find the mother in contempt of court for failing to abide by the terms of a prior modification order which required her to, inter alia, permit him (the non-custodial parent) to communicate with the child via webcam on three specified days of the week at specified times. The prior modification order further provided that "[i]f the child is unavoidably away from the residence at that

---

[16] *Hunter*, supra; *Sponsler*, supra; OCGA § 19-6-2 (a) (1).

[17] See generally *Hammond v. Hammond*, 282 Ga. 456, 458 (5) (651 SE2d 95) (2007).

11

[scheduled webcam communication] time, the custodial parent shall arrange for the child to call the non-custodial parent by telephone at that time." After the hearing in this case, the trial court found that the mother was in wilful contempt of its order "as to the webcam calls." The mother contends that the evidence did not support the trial court's finding.

"The essence of civil contempt … is willful disobedience of a prior court order."[18]

> The trial court has the power to see that there be compliance with the intent and spirit of its decrees and no party should be permitted to take advantage of the letter of a decree to the detriment of the other party. The trial court in a contempt case has wide discretion to determine whether [its] orders have been violated. [Its] determination will not be disturbed on appeal in the absence of an abuse of discretion.[19]

At the hearing, the father testified as to days that the child had not been made available to communicate with him via webcam between the date of the last modification order (in July 2009) and the time he filed his motion (in July 2011). As

---

[18] *Kremer v. Tea Party Patriots, Inc.*, 314 Ga. App. 459, 464 (1) (724 SE2d 466) (2012) (citation and punctuation omitted).

[19] *Davis v. Davis*, 250 Ga. 206, 207 (296 SE2d 722) (1982) (citations and punctuation omitted).

to some of the days, there was no evidence adduced that the child was "unavoidably away from the residence" and unable to communicate via webcam.

The mother denied that she had ever failed to make the child available for webcam communications with the father during the pertinent period. "To the extent that [the mother's] testimony conflicted with that of [the father], it was for the trial court to determine credibility."[20] The mother testified that if the father had to travel on webcam days for a business trip, "we reschedule [Skype or cell phone connection]"; but the evidence showed that on one occasion when the father was traveling and had trouble obtaining internet access or receiving a call, the mother later informed him that "if you choose not to contact [the child] on the designated days and times, I do not have to provide you with a make up call per court order. You refuse - you loose [sic]." Also, in an email to the father, the mother admitted that she had not always made the child available for webcam communications. Therefore, the evidence supported the trial court's finding that the mother wilfully violated its order. "Thus,

---

[20] *Saravia v. Mendoza*, 303 Ga. App. 758, 763 (2) (695 SE2d 47) (2010) (citation and footnote omitted).

13

because there is some evidence to support the trial court's order on this point, we find no abuse of discretion."[21]

At the hearing the trial court announced that the mother was in contempt of court "as to [the child] being made available for calls, [and] for repeatedly being late to the airport."[22] But the court did not include such a determination in its written contempt order, insofar as "calls" meant phone calls, or as it concerned being late to the airport. Accordingly, there is no legal ruling for us to review in that regard.[23]

*Judgment affirmed in part and vacated in part, and case remanded with direction in Case No. A14A0308. Judgment affirmed in Case No. A14A0309. Ellington, P. J., and McMillian, J., concur.*

---

[21] *Kremer*, supra.

[22] To the extent that "calls" meant webcam calls or communications, we have addressed that matter herein.

[23] See generally *Hipster, Inc. v. Augusta Mall Partnership*, 291 Ga. App. 273, 277 (3) (661 SE2d 652) (2008) ("what the judge orally declares is no judgment until the same has been reduced to writing and entered as such," and until then, there is no legal ruling for appellate court to review) (footnote and punctuation omitted); *Shirley v. Abshire*, 288 Ga. App. 819, 820 (655 SE2d 694) (2007).