## S10A1779. BAARS v. FREEMAN.
### (708 SE2d 273)

HUNSTEIN, Chief Justice.

This appeal arises from the trial court's order in competing post-divorce contempt proceedings commenced by appellant Jami Lynne Baars and appellee Richard Guy Freeman. We granted Baars' application for discretionary appeal. Finding that the trial court improperly modified the final divorce decree and for other reasons explained below, we reverse in part and remand.

Baars and Freeman were divorced pursuant to the trial court's

---

[2] This instruction was repeated in the final jury charge.

final judgment and divorce decree of July 17, 2001, which incorporates the parties' March 12, 2001 settlement agreement. They have a son who was born January 17, 1998. The decree awards legal and physical custody of the child to Baars and orders Freeman to pay $146.25 in weekly child support. The settlement agreement, inter alia, governs Freeman's visitation rights and imposes various obligations on him.

Baars filed a contempt proceeding against Freeman in 2003, alleging that he had failed to pay child support and had violated certain obligations in the settlement agreement. After Freeman failed to appear at a compliance hearing in 2004, the trial court issued an order finding Freeman in contempt for failing to pay child support and failing to verify his compliance with the settlement agreement. The trial court found that Freeman owed $11,608.75 in child support and issued a bench warrant for his arrest, to remain in effect until Freeman paid $4,000 to the Sheriff's Department.

In 2004, Freeman moved to England, his native country. In May 2004, Baars, her new husband, and the child relocated to Holland and resided there until August 2008, when they returned to Georgia. While living in Holland, the child visited with Freeman between two and four months each year. In September 2008, Baars, with the assistance of the Georgia Department of Human Resources ("DHR"), Division of Child Support Services, filed for reciprocal enforcement of child support in the United Kingdom. In May 2009, Baars cut off telephone contact between Freeman and the child, alleging that she did so because Freeman verbally abused her and disparaged her and her family in front of the child.

On May 26, 2009, Freeman filed a motion for contempt and motion for specific performance in the Superior Court of Gwinnett County seeking to enforce his rights to visitation and communication with the child. On June 18, 2009, Baars filed a petition for contempt against Freeman in the trial court based on his alleged ongoing failure to pay child support and to comply with the settlement agreement. Thereafter, Freeman paid the purge amount under the 2004 contempt order. Freeman voluntarily dismissed his motion for specific performance in Gwinnett County, and his motion for contempt was transferred to the trial court and consolidated with Baars' contempt proceeding. The trial court held a hearing on October 28, 2009, during which Freeman testified by telephone from England. The trial court subsequently issued an order finding Baars in contempt for denying Freeman's visitation and communication rights and finding both parties in contempt for disparaging one another. The trial court declined to find that Freeman otherwise was in contempt.

1. Baars argues that the trial court impermissibly modified the decree.

(a) Baars argues that the trial court improperly modified the

decree in ordering that: "Each party shall pay fifty percent of all reasonable medical expenses not covered by the minor child's medical insurance." We agree.

"While the trial court has broad discretion to determine whether [a divorce] decree has been violated and has authority to interpret and clarify the decree, it does not have the power in a contempt proceeding to modify the terms of the . . . decree." *Dohn v. Dohn*, 276 Ga. 826, 828 (584 SE2d 250) (2003). The settlement agreement expressly states: "[Freeman] shall be responsible for and shall pay *all* reasonable and necessary uninsured medical, dental, and orthodontic expenses of the minor child. . . ." (Emphasis supplied.) The trial court went far beyond interpreting or clarifying the decree and instead substituted a cost-sharing arrangement for the provision of the settlement agreement that makes Freeman responsible for "all" of his son's reasonable, necessary uninsured medical expenses. See *Pineres v. George*, 284 Ga. 483 (1) (668 SE2d 727) (2008) (trial court improperly modified the parties' divorce decree when it shifted final decision-making authority regarding child's health care to co-parenting counselor); *Perry v. Perry*, 265 Ga. 186 (3) (454 SE2d 122) (1995) (trial court improperly modified terms of divorce judgment, which provided that father would be responsible for children's uninsured medical and dental expenses, by ruling that father was responsible for one-half of uninsured expenses). We reverse the trial court's order insofar as it states that the parties are to share the child's reasonable uninsured medical expenses.

(b) Baars next maintains that the trial court in effect modified the decree by refusing to find Freeman in contempt of his obligation under the settlement agreement to provide health insurance for the child. The settlement agreement provides that, while Freeman is paying child support, he must "maintain medical and dental insurance coverage on [the] child under the plan presently available to him or under another plan or plans equivalent thereto." The trial court concluded that Freeman was not in contempt of this obligation, but it did not go further and declare that the obligation to provide health insurance does not exist or purport to relieve Freeman of that obligation. Compare *Smith v. Smith*, 281 Ga. 204 (2) (636 SE2d 519) (2006) (trial court "did far more than refuse to find the Husband in contempt because of purported difficulty in compliance with the decree; it substantially modified the decree"); *Dohn*, supra, 276 Ga. at 828 (trial court "went beyond interpretation and into the realm of modification"; it ruled, not just that husband was not in contempt, but also that he had no obligation to maintain life insurance policy discussed in decree). As such, the trial court did not improperly modify the decree.

2. Baars contends that the trial court erred in failing to make

additional findings of contempt against Freeman. A trial court's ruling on a contempt motion will be affirmed if there is any evidence to support it. *Killingsworth v. Killingsworth*, 286 Ga. 234 (3) (686 SE2d 640) (2009). However, reversal and remand may be necessary if the ruling rests on an "erroneous legal premise." *Nesbit v. Nesbit*, 241 Ga. 351 (2) (245 SE2d 303) (1978).

(a) Baars argues that the trial court erred in finding that Freeman was not in contempt for failing to pay child support due to, in its words, "a lack of evidence of an amount certain and those proceedings in the Courts of the United Kingdom."

At the contempt hearing, Baars' counsel advised the trial court that the parties were stipulating "that, according to the terms of the [decree], the amount of child support that would be owed as of today would be [$53,389]." Freeman admitted on cross-examination that his trial counsel stipulated to the amount of his arrearages. " 'A stipulation by the parties upon which a resolution of some issue is to be made is binding.' " (Citation and punctuation omitted.) *Stanley v. Hart*, 254 Ga. App. 258, 261 (2) (562 SE2d 186) (2002). See also *Walden v. Camp*, 206 Ga. 593 (1) (58 SE2d 175) (1950). In citing the "lack of evidence of an amount certain" as a ground for finding that Freeman was not in willful contempt, the trial court erroneously disregarded the parties' stipulation.

It further appears that the trial court erred as a matter of law by concluding that, due to the pending United Kingdom proceeding, it could not rule on the issue of Freeman's failure to pay child support. Freeman argued below that, in view of the prior-filed United Kingdom enforcement proceeding, the Uniform Interstate Family Support Act ("UIFSA"), OCGA § 19-11-101 et seq., deprived the trial court of jurisdiction over the issue of child support arrearages. An analysis of UIFSA yields the opposite conclusion.

UIFSA provides an interstate framework for resolving jurisdictional issues with respect to the establishment, modification, and enforcement of child support orders, which also extends to foreign countries, such as the United Kingdom, meeting UIFSA's definition of "state."[1] UIFSA provides:

---

[1] The definition of "state" under UIFSA includes "[a] foreign jurisdiction that has enacted a law or established procedures for issuance and enforcement of support orders which are substantially similar to the procedures under this article, the Uniform Reciprocal Enforcement of Support Act, or the Revised Uniform Reciprocal Enforcement of Support Act." OCGA § 19-11-101 (19). The United Kingdom would meet this definition given that the United States Secretary of State has declared the United Kingdom to be a "foreign reciprocating country" for the purpose of family support obligations. See 42 USC § 659a; Notice of Declaration of Foreign Countries as Reciprocating Countries for the Enforcement of Family Support (Maintenance) Obligations, 73 Fed. Reg. 72555 (Nov. 28, 2008); *Gladis v. Gladisova*,

A tribunal in Georgia issuing a support order consistent with the law of Georgia has continuing, exclusive jurisdiction over a child support order:

(1) As long as Georgia remains the residence of the obligor, the individual obligee, or the child for whose benefit the support order is issued; or

(2) Until all of the parties who are individuals have filed written consents with the tribunal in Georgia for a tribunal of another state to modify the order and assume continuing, exclusive jurisdiction.

OCGA § 19-11-114 (a). Continuing, exclusive jurisdiction over the child support provisions of the decree exists in the trial court since the trial court issued the decree, Baars and the child reside in Georgia, and no evidence exists that Baars and Freeman have filed written consents to allow the tribunal of another state to assume continuing, exclusive jurisdiction.[2] Given its continuing, exclusive jurisdiction, the trial court unquestionably possesses authority to enforce the child support provisions of the decree prospectively and as to past violations.[3] In exercising that authority, the trial court, as a matter of Georgia law, may impose contempt sanctions for willful violations of its decree. See OCGA §§ 15-1-4, 19-6-28; *Dyer v. Surratt*, 266 Ga. 220 (2) (466 SE2d 584) (1996) (Georgia court has the "inherent power to enforce its orders through contempt proceedings").

Under UIFSA, Baars was entitled to enlist the assistance of DHR, as an "initiating tribunal," to commence proceedings in the United Kingdom to enforce Freeman's child support obligations. See OCGA §§ 19-11-102, 19-11-112, 19-11-123. But her decision to do so did not affect her right to file a contempt petition below. "Remedies provided by [UIFSA] are cumulative and do not affect the availability of remedies under other law." OCGA § 19-11-103. It is also well-established under Georgia law that an obligee under a judgment requiring payment of alimony or child support may pursue available remedies for enforcing the judgment, singly or concurrently, until the judgment is satisfied. *Brookins v. Brookins*, 257 Ga. 205 (2) (357 SE2d

---

856 A2d 703, 706, n. 1 (Md. 2004) (in light of federal level declaration that Slovak Republic was reciprocating country, it was "state" under Maryland UIFSA).

[2] The trial court was not divested of continuing, exclusive jurisdiction by virtue of the fact that Baars and the child lived for a period of time in Holland. See *Klingel v. Reill*, 841 NE2d 1256 (2) (Mass. 2006) (construing Massachusetts UIFSA).

[3] The trial court would lose its enforcement authority only if the child support provisions of the decree are modified "by a tribunal of another state pursuant to this article or a law substantially similar to this article." OCGA § 19-11-114 (b). Even then, the court would only lose authority as to prospective enforcement, as described in OCGA § 19-11-114 (c).

77) (1987); *Lipton v. Lipton*, 211 Ga. 442 (1) (86 SE2d 299) (1955); *Hill v. Hill*, 219 Ga. App. 247 (464 SE2d 656) (1995). Accordingly, the trial court was authorized to decide if Freeman was in contempt as to child support and to impose sanctions, in its discretion.

For the foregoing reasons, we reverse the portion of the trial court's order declining to find Freeman in contempt for failing to pay child support and remand for proceedings consistent with this opinion.

(b) Under the settlement agreement, Baars quitclaimed her interest in a 1998 Jeep Cherokee to Freeman. Freeman was required to "refinance said vehicle within ninety (90) days of the date of this Agreement so as to remove [Baars'] name from the purchase money obligation on said vehicle." Baars argues that the trial court erred in refusing to hold Freeman in contempt for failing to comply with this obligation. It is undisputed that Freeman did not refinance the loan, the vehicle was repossessed, and Baars is liable for $15,000 in outstanding debt.

The trial court found Freeman was not in contempt "due to the vehicle's subsequent repossession . . . and the fact that this Court cannot force a lien holder, who is not a party before the Court, to alter a contract previously entered into by the parties." In so finding, the trial court again misapprehended the scope of its authority. While we do not take issue with the trial court's statement that it could not force a third party lender not before the court to modify a contract, the trial court failed to recognize that, through the threat or imposition of contempt sanctions, it possesses authority to induce Freeman to bring himself into compliance with the settlement agreement. See *Darroch v. Willis*, 286 Ga. 566, 571 (3) (690 SE2d 410) (2010) (discussing "effective means of enforcing the divorce decree" available to the trial court). We reverse the trial court's order with respect to this issue and remand for further proceedings consistent with this opinion.

(c) Baars alleged that Freeman was in contempt for failing to comply with a provision in the settlement agreement requiring him to pay Baars' divorce attorney $3,750 in attorney fees, but the trial court's order is silent on this subject. On remand, the trial court should address the issue. See *Edwards v. Edwards*, 224 Ga. 224, 225 (160 SE2d 830) (1968) (judgment of trial court should respond to issues made by pleadings and evidence).

(d) Baars asserts that the trial court should have found Freeman in contempt for violating a provision in the settlement agreement requiring Freeman to "maintain life insurance coverage on his life in the amount of $130,000.00, with [Baars] as Trustee for the minor child, named as beneficiary thereof." Freeman testified that he has now obtained an insurance policy in the amount of 90,000 British

pounds, which names his son as beneficiary. According to Freeman, he could not name Baars as trustee because the policy requires the trustee to reside in the United Kingdom. The trial court's order states that Freeman

> is found not to be in willful contempt . . . for not providing a life insurance policy on [Freeman's] life for the benefit of the minor child due to evidence that shows the existence of such a policy and that Plaintiff may not be named as trustee because of her residence outside the United Kingdom.

The trial court further ordered: "A certified copy of [Freeman's] current life insurance policy that complies with this Court's previous order shall be sent to Plaintiff within thirty days of the entry of this order." Based on this directive, it appears that the trial court concluded that a life insurance policy that does not name Baars as trustee nonetheless "complies" with the settlement agreement. The settlement agreement provides otherwise and, as discussed, the trial court lacks authority to modify the settlement agreement in contempt proceedings. As such, we reverse the trial court's order on this issue and remand for proceedings consistent with this opinion.

(e) Baars argues that Freeman should be held in contempt for failing to pay $228.60 of the child's uninsured medical expenses. Given our disposition in Division 1 (a), the trial court should consider this issue on remand.

(f) Finally, Baars argues that the trial court erred in concluding that Freeman was not in contempt for violating his obligation to provide medical and dental insurance for the child. While the evidence was in conflict, Freeman testified that when the child was living abroad, he provided the child with a health insurance card valid throughout Europe, the child's doctor and dentist were in England, and the child would receive treatment during his visits there. The trial court was entitled to rely on this testimony to find that Freeman was not in contempt of the decree while the child resided in Europe. Freeman further stated "[t]here was an offer of health insurance" in the United States but "[Baars] declined it, and said that she had been accepted for state insurance." While Baars and Freeman could not agree among themselves to modify the decree, Freeman's testimony would authorize a conclusion that Freeman was not in contempt once the child returned to Georgia.[4]

---

[4] We emphasize that Freeman remains responsible for providing medical and dental insurance for the child. The trial court did not and could not alter that obligation.

See *Meredith v. Meredith*, 238 Ga. 595 (2) (234 SE2d 510) (1977).

3. Baars argues that the trial court erred in finding her in contempt of the decree. We disagree.

Baars first maintains that the trial court should have dismissed Freeman's contempt motion for want of prosecution and should not have allowed Freeman to testify by telephone. UIFSA provides, however, that "[i]n a proceeding under this article, a tribunal of Georgia may permit a party or witness residing in another state to be deposed or to testify by telephone, audiovisual means, or other electronic means at a designated tribunal or other location in that state." OCGA § 19-11-135 (f). This provision of UIFSA applies, where, as here, a trial court exercises jurisdiction over a non-resident in a proceeding to enforce a child support order. See OCGA §§ 19-11-110, 19-11-111. In view of OCGA § 19-11-135 (f) and given that the two closely interrelated contempt proceedings were consolidated for hearing, the trial court did not abuse its discretion in permitting Freeman to testify by telephone or by not dismissing his motion.

Baars next claims that the trial court's findings of contempt against her are unauthorized. The settlement agreement's visitation provisions state:

> Each party shall at all times foster a feeling of affection between the [child] and the other party. Neither party shall do anything which may restrain the children from reasonably communicating with the other party or injure the opinion of the [child] toward the other party or which may hamper the free and natural development of the [child's] love and respect for the other party.

It is undisputed that Baars severed telephone communications between Freeman and the child. Although she testified that she cut off communication because of Freeman's verbal abuse, we find no abuse of discretion in the trial court's finding of contempt on this issue.

4. In view of our dispositions in Divisions 1 and 2, we reverse the trial court's order to the extent that it denies Baars' motion for attorney fees under OCGA § 19-6-2 and remand for further proceedings consistent with this opinion.

*Judgment affirmed in part and reversed in part and case remanded with direction. All the Justices concur.*

DECIDED MARCH 18, 2011.

*Christopher T. Adams*, for appellant.

*Richard Freeman*, for appellee.