302 Ga. 39
FINAL COPY

S17A0799.  ROSS v. ROSS.

BENHAM, Justice.

This appeal arises from a granted application for interlocutory review. The parties were divorced in Connecticut on January 25, 2010.  At that time, appellant Husband's child support obligation was $279 per week for the parties' two minor children.  On June 16, 2010, the Connecticut court entered an order of modification to facilitate appellee Wife's move to Georgia with the children.  In that order, the Connecticut court reduced Husband's child support obligation to $100 per week.  Husband still resides in Connecticut, while Wife and the children live in Coweta County.  On January 12, 2016, Wife filed an action in Coweta County to domesticate and modify the parties' Connecticut divorce decree and the modified order.[1]  The complaint was served on Husband personally while he was in Coweta County visiting the children.

---

[1] As basis for her complaint for modification, Wife alleges: "Since June 16, 2010, there has been substantial change [in Husband's] income and financial circumstances such as to warrant a modification/increase of Husband's child support obligations."  There is no allegation that Husband is in default of any of his child support obligations.

Husband moved to dismiss the action on the ground that the Georgia trial court lacked subject matter jurisdiction to modify the Connecticut child support order under the Uniform Interstate Family Support Act (UIFSA), OCGA § 19-11-100 et seq., in particular because the requirements of OCGA § 19-11-172 (a)[2] had not been met. Wife argued that jurisdiction was proper under OCGA § 9-12-130 et seq., which is the Uniform Enforcement of Foreign Judgments Law (UEFJL), to both enforce and modify the Connecticut child support order. The trial court ultimately denied Husband's motion to dismiss, reasoning that it had jurisdiction to modify the Connecticut child support order; however, it granted Husband's request for a certificate of immediate review. We granted Husband's application for interlocutory review on May 31, 2016, and, having considered the record, the parties' arguments, and the relevant legal authorities, we reverse the trial court's judgment for the reasons set forth below.

1. Since the 1950s, there has been an ongoing effort to make laws concerning the enforcement of child support orders more uniform across the states. See Margaret Campbell Haynes & Susan Friedman Paikin,

___

[2] OCGA § 19-11-172 (a) provides: "If all of the parties who are individuals reside in Georgia and the child does not reside in the issuing state, a tribunal in Georgia has jurisdiction to enforce and to modify the issuing state's child support order in a proceeding to register that order."

2

"Reconciling" FFCCSOA and UIFSA, 49 Fam. L. Q. 331, 332 (Summer 2015). Prior to 1975, the attempt at uniformity was largely left to the states through the adoption and implementation of the Uniform Reciprocal Enforcement of Support Act (URESA). See id. In 1975, while amending the Social Security Act, Congress became more involved in the regulation of child support by conditioning receipt of federal funding on the states' adoption of certain legislative initiatives. Id.[3] These congressional efforts ultimately led to the formation of the United States Commission on Interstate Child Support in the early 1990s. Id. at 333. This commission was tasked with reviewing the URESA and making recommendations to Congress for improving the interstate enforcement of child support. Id.[4] The commission

---

[3] "Congress has an interest in enforcement of child support orders because when child support is not paid by a noncustodial parent the federal government pays child support in the form of welfare." Laura W. Morgan, Pre-Emption or Abdication? Courts Rule Federal Law Trumps State Law in Child Support Jurisdiction, 24 J. Am. Acad. Matrim. Law. 217, 219 (2011).

[4] The problems reported to the commission about child support enforcement under the URESA are described as follows:

> Because states had enacted different versions of URESA, the so-called uniform act was not uniform; caseworkers did not know what to expect when they transmitted a case to a different state. Parents had the most complaints. Under URESA, every time a noncustodial parent moved, a custodial parent had to start over again. Even when a custodial parent wanted to enforce an existing support order, the state where the other parent lived usually issued its own order. The presence of two or more conflicting orders meant that the noncustodial parent never knew which order was the "real" order, the custodial parent never knew how much support to count on, and the courts had difficulty in calculating arrears. Custodial parents also noted the abysmal collection rate.

Haynes & Paikin, supra, 49 Fam. L. Q. at 333. See also Morgan, supra, 24 J. Am. Acad. Matrim. Law. at 217-219 (discussing the history and problems associated with the URESA).

3

was ultimately responsible for major congressional legislation that would effectively federalize the enforcement of child support, including drafting the model UIFSA in 1992. Id. at 334.[5]

In 1994, based on recommendations from the commission, the United States Congress enacted the Full Faith and Credit for Child Support Orders Act (FFCCSOA). See 28 USC § 1738B. That law establishes a general rule requiring a state to enforce the child support order of another state. See 28 USC § 1738B (a) (1). The law further prohibits a state from modifying another state's child support order if that issuing state has "continuing, exclusive jurisdiction" over the matter. See 28 USC § 1738B (a) (2), (d), and (e).[6] In 1997, Georgia codified the requirements of 28 USC § 1738B at OCGA § 19-6-26. See Connell v. Woodward, 235 Ga. App. 751, 753 (1) (509 SE2d 647) (1998) ("On July 1, 1997, OCGA § 19-6-26, which adopts the provisions of the FFCCSOA, became effective in Georgia."). OCGA § 19-6-26 (a) (2) defines continuing, exclusive jurisdiction as "the authority

---

[5] See also Laura W. Morgan, *The Federalization of Child Support, A Shift in the Ruling Paradigm: Child Support as Outside the Contours of "Family Law,"* 16 J. Am. Acad. Matrim. Law. 195 (provides a historical overview of the federal oversight of child support enforcement).

[6] 28 USC § 1738B became effective on October 20, 1994. See Haynes & Paikin, supra, 49 Fam. L. Q. at 335.

and jurisdiction of a court to enter or modify a judgment, decree, or order for the payment of child support…."

In 1996, Congress took further action to regulate interstate child custody orders by mandating the states to adopt the UIFSA as a condition of receiving federal funds:

> The Personal and Work Opportunity Reconciliation Act of 1996 (Public Law 104-193), mandated that all states adopt the 1993 Uniform Interstate Family Support Act ("UIFSA") Model Act, and the 1996 amendments adopted by the National Conference of Commissioners on Uniform State Laws. The UIFSA was duly enacted by the General Assembly and is codified at sections 19-11-100 through 19-11-190 of the Georgia Code. The UIFSA was created to force uniformity in procedures and law with regard to intergovernmental establishment, enforcement, and modification of child support orders.

Ga. Comp. R. & Regs., r. 290-7-1-.13. See also Haynes & Paikin, supra, 49 Fam. L. Q. at 336. In keeping with federal law concerning full faith and credit for child support orders, the UIFSA, as codified by the General Assembly at OCGA § 19-11-100 et seq., prohibits Georgia from modifying another state's child support order unless specific requirements are met divesting the foreign state of its continuing, exclusive jurisdiction. See OCGA §§ 19-11-168, 19-11-169, 19-11-170, and 19-11-172. See also <u>Ga. Dept. of Human Resources v. Deason</u>, 238 Ga. App. 853, 857 (1) (a) (520

5

SE2d 712) (1999) (one of the purposes of UIFSA was to legislate that "foreign support orders are unmodifiable, except by FFCCSOA, Ga. L. 1997, pp. 1613, 1619-1620, § 7 (OCGA § 19-6-26)").[7] Accordingly, there are only a handful of circumstances in which a Georgia tribunal may modify another state's child support order:

> (1) (a) neither of the parties nor the child live in the foreign state/issuing state; (b) the petitioner who seeks modification is a nonresident of Georgia; and (c) the respondent is subject to the personal jurisdiction of a Georgia tribunal;[8] or
> (2) (a) the child is a Georgia resident or an individual party is subject to the personal jurisdiction of a Georgia tribunal and (b) all of the individual parties have filed written consents in the foreign tribunal for a Georgia tribunal to modify the child support order and assume continuing, exclusive jurisdiction;[9] or
> (3) (a) all the individual parties reside in Georgia and (b) the child does not reside in the foreign state/issuing state.[10]

---

[7]    The FFCCSOA and UIFSA thus interact together…. The federal statute lays out jurisdictional requirements for state courts to recognize, enforce, and modify orders of sister states, while the state statute lays out the requirements for the state to make original orders, recognize foreign orders, and modify any outstanding order. Thus, FFCCSOA is a federal statute that establishes the standards by which the states can determine their jurisdiction to issue their own support orders and the effect to be given to support orders from other states. As a jurisdictional statute, it is authorized by the Full Faith and Credit Clause of the United States Constitution, which empowers Congress to enact general laws, to prescribe the manner in which state Acts, records, and proceedings shall be proved, and the effect thereof. (Footnotes omitted.) Morgan, supra, 24 J. Am. Acad. Matrim. Law. at 220-221.

[8] See OCGA § 19-11-170 (a) (1).  See also 28 USC § 1738B (e) (2) (A).

[9] See OCGA § 19-11-170 (a) (2).  See also 28 USC § 1738B (d); OCGA § 19-6-26 (d).

[10] See OCGA § 19-11-172 (a).

If none of the above factual circumstances exist, then a Georgia tribunal cannot modify a foreign state's child support order.[11]

In this case, Connecticut has continuing, exclusive jurisdiction over the child support order at issue because Husband is still a resident of Connecticut and neither party has provided written consent for a Georgia tribunal to exercise jurisdiction over the matter. See 28 USC § 1738B (d); Connell v. Woodward, 235 Ga. App. at 754. See also 28 USC § 1738B (e) (2) (A); OCGA § 19-6-26 (d). Therefore, the trial court erred when it held it had jurisdiction to modify the parties' child support order.[12] If Wife continues to pursue modification of the child support order, she must do so through proceedings in the Connecticut court.[13]

---

[11] We note, however, that a Georgia tribunal generally has authority to *enforce* a foreign child support order as a matter of comity. See 28 USC §1738B (a) (1); OCGA §§ 19-11-104 (b); 19-11-110 (a) (1). It is only when modification is requested that more careful consideration must be had to determine a Georgia court's authority to act.

[12] We find it disconcerting that counsel for the parties did not mention 28 USC § 1738B or OCGA § 19-6-26 in the briefing to this Court or, apparently, to the trial court below.

[13] The UIFSA does provide that a Georgia tribunal may act as an "initiating tribunal" to forward proceedings to a foreign tribunal. See OCGA § 19-11-112. See also, e.g., Baars v. Freeman, 288 Ga. 835 (2) (a) (708 SE2d 273) (2011) (a parent may enlist the assistance of a Georgia tribunal, i.e., the Georgia Department of Human Resources, to commence proceedings in a foreign country to enforce child support obligations).

2. Wife's invocation of the UEFJL does not change this result. That law is necessarily preempted by 28 USC § 1738B as it pertains to her request for the Georgia court to modify the parties' Connecticut child support order.[14] See, e.g., <u>Kilroy v. Superior Court of Los Angeles County</u>, 54 Cal. App.4th 793, 818-819 (63 Cal. Rptr. 2d 390) (1997) (28 USC § 1738B preempts "state court jurisdiction to modify interstate child support orders").[15] Likewise, the cases relied upon by Wife and the trial court,[16] which predate the passage of 28 USC § 1738B in October 1994 and the effective date of Georgia's implementation of the UIFSA in January 1998 and which allow for Georgia courts to modify foreign support orders upon domestication, are no

---

[14] In <u>Dial v. Adkins</u>, 265 Ga. App. 650 (1) (595 SE2d 332) (2004), the Court of Appeals held that the "procedures" set forth in the UIFSA for the *registration* and *enforcement* of foreign support orders are in addition to and not exclusive to the UEFJL. That is an accurate statement; however, since <u>Dial v. Adkins</u> only involved the enforcement of a Tennessee child support order by a Georgia court, the decision cannot support the proposition that a foreign child support order may be *modified* by a Georgia court pursuant to the UEFJL when the foreign tribunal has continuing, exclusive jurisdiction.

[15] In <u>Kilroy</u>, the California Court of Appeal held that a California trial court had no authority to modify a Georgia child support order under 28 USC § 1738B. The facts showed the mother, who was the petitioner, and the child still lived in Georgia, while the respondent father lived in California. These factual circumstances meant that Georgia had continuing, exclusive jurisdiction over the matter, prohibiting the California court from modifying the Georgia child support order in the absence of the parties' written consent to jurisdiction in California. <u>Kilroy</u>, supra, 54 Cal. App. 4th at 804.

[16] See <u>Blue v. Blue</u>, 243 Ga. 22 (252 SE2d 452) (1979); <u>Sovern v. Sovern</u>, 156 Ga. App. 752 (275 SE2d 791) (1980).

8

longer good law inasmuch as those precedents have effectively been superseded by federal law and Georgia statutory law implementing same.

Accordingly, the trial court's judgment is reversed.

<u>Judgment reversed. All the Justices concur</u>.

Decided September 13, 2017.

Domestic relations. Coweta Superior Court. Before Judge Simpson.

<u>Jason G. Smith</u>, for appellant.

<u>McNally, Fox, Grant & Davenport, Patrick J. Fox</u>, for appellee.