**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and BROWN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**January 15, 2021**

# In the Court of Appeals of Georgia

A20A2058. WALL v. JAMES.

DILLARD, Presiding Judge.

Angela Wall appeals from the trial court's grant of Donny James's counterclaim for contempt, which was filed after Wall petitioned for a modification of visitation concerning their minor daughter. Specifically, Wall argues that the trial court erred by (1) finding she willfully violated a parenting plan in three different instances; (2) ordering her to pay James's attorney fees under OCGA § 19-6-2; and (3) ordering her to repay the cost of airline tickets purchased by James for "aborted visitation efforts." Because we agree with Wall as to each of these contentions, we reverse.

Viewed in the light most favorable to the trial court's rulings,[1] the record shows that Wall and James are the parents of E. J., who was 15 years old at the time of this action. Wall and James have never been married, but in 2017, a court decreed that E. J. was James's legitimate child. The order of legitimation incorporated a parenting plan, awarding joint legal custody with Wall having primary physical custody of E. J. Wall lives in Georgia, and James lives in Maryland.

The parenting plan provides, in pertinent part, that "[d]aily phone calls from [James] shall be unrestricted to the minor child's phone," and "[b]oth parents may FaceTime, Skype[,] or [use] other social media [to] communicate with the minor child on [an] unrestricted basis when the child is in the custody and care of the other parent." The plan further notes that Wall will have custodial time in odd-numbered years from "Thanksgiving 2017 forward (from 6:00 p.m. on the day school recesses for Thanksgiving until 6:00 p.m. on the Sunday night before school resumes)," and James will have such time in even-numbered years. As for Christmas, the plan provides that in odd-numbered years, James will receive the "[f]irst half of Christmas holidays (from after school lets out for Christmas break until 9:00 a.m. on December 27)." Finally, the plan provides that "[t]he holiday parenting time/visitation takes

[1] *Saravia v. Mendoza*, 303 Ga. App. 758, 758-59 (695 SE2d 47) (2010).

precedence over the regular parenting time/visitation schedule during the school year."

On October 10, 2019, Wall filed a petition for modification of visitation against James, seeking to have his visits with E. J. restricted in accordance with the child's wishes. In doing so, Wall attached an "Affidavit of Election," in which E. J. stated, "While I love my father, I do not want to visit with him at this time, and I would like for all future visits with him to be as he and I can agree."

James filed a counterclaim against Wall, contending that she was in contempt of the parenting plan order by preventing him from (1) visiting with E. J. during his allotted time in November 2019; (2) visiting with E. J. during his allotted time at Christmas 2019; and (3) speaking with E. J. by phone between October 2019 and February 2020. The trial court denied Wall's motion to modify visitation and instead granted James's counterclaim for contempt. This appeal follows, in which Wall only challenges the trial court's order as to contempt.

1. Wall argues the trial court erred by holding her in contempt and finding that she willfully violated the parenting plan in three separate instances. We agree.

In order to hold a party in contempt, a trial court must find that "the party *willfully* disobeyed a court order."[2] And in ruling on a contempt motion, a trial court is vested with "wide discretion in deciding both whether the court's orders have been violated and how such infringements should be treated."[3] To that end, we will not disturb the trial court's determinations on these issues "absent an abuse of that discretion."[4] So, given the wide latitude afforded to the trial court, we will affirm a contempt ruling if "there is any evidence in the record to support it."[5] Indeed, as the factfinder, it is the trial court's duty to "reconcile seemingly conflicting evidence and to weigh the credibility of witnesses."[6] With all of this in mind, and construing the

---

[2] *Cousin v. Tubbs*, 353 Ga. App. 873, 875 (1) (840 SE2d 85) (2020) (emphasis supplied); *see also Saravia*, 303 Ga. App. at 763 (2) ("The essence of civil contempt is willful disobedience of a prior court order." (punctuation omitted)).

[3] *Cousin*, 353 Ga. App. at 875 (1) (punctuation omitted); *see Park-Poaps v. Poaps*, 351 Ga. App. 856, 859 (1) (833 SE2d 554) (2019) ("The trial court's discretion in contempt matters is broad . . . ." (punctuation omitted)).

[4] *Cousin*, 353 Ga. App. at 875 (1); *see Dingle v. Carter*, 350 Ga. App. 255, 256 (1) (829 SE2d 604) (2019) ("The question of whether a contempt has occurred is for the trial court, and its determination will be overturned only if there has been a gross abuse of discretion." (punctuation omitted)).

[5] *Cousin*, 353 Ga. App. at 875 (1) (punctuation omitted); *accord Froehlich v. Froehlich*, 297 Ga. 551, 554 (3) (775 SE2d 534) (2015).

[6] *Cousin*, 353 Ga. App. at 875 (1) (punctuation omitted); *see Saravia*, 303 Ga. App. at 763 (2) (explaining that "it was for the trial court to determine credibility" in

4

evidence in favor of the trial court's ruling,[7] we will now address each instance of alleged contempt.

(a) The trial court concluded that Wall was in contempt by preventing James from visiting with E. J. during his allotted time in November 2019, but we agree with Wall that this finding was unsupported by the evidence.

The parenting plan provides that (1) Wall is to have E. J. for Thanksgiving during odd-numbered years, (2) "[t]he holiday parenting time/vacation takes precedence over the regular parenting time/vacation schedule during the school year," and (3) if there is a "conflict between the regular parenting access schedule and the holiday schedule, the holiday schedule will prevail." Importantly, the plan also specifies that the period for Thanksgiving visitation is "from 6:00 p.m. on the day school recesses for Thanksgiving until 6:00 p.m. on the Sunday night before school resumes."

In this instance, James emailed Wall on October 18, 2019, to inform her that he purchased tickets for E. J. to visit him on the weekend of November 22, 2019. Wall responded by advising James that she was entitled, under the parenting plan, to

ruling on a contempt motion).

[7] *Cousin*, 353 Ga. App. at 875 (1).

spend Thanksgiving with E. J. during odd-numbered years. James took issue with Wall's response, noting that this weekend was prior to the Thursday of Thanksgiving. Nonetheless, Wall stood by her interpretation of the parenting plan and did not take E. J. to the airport to catch the flight up to Maryland for that weekend.

The undisputed testimony at trial was that the Thanksgiving visitation period for 2019 encompassed the weekend *before* the Thursday of Thanksgiving. In other words, school "recessed"[8]—or adjourned for Thanksgiving—*prior* to the relevant weekend.[9] And once again, the parenting plan provides that the Thanksgiving visitation period started at "6:00 p.m. on the day school recesses for Thanksgiving." Accordingly, the trial court abused its discretion in finding Wall in contempt when there was no evidence to support James's assertion that the weekend he requested was *not* part of the Thanksgiving visitation period under the terms of the parenting plan.[10]

---

[8] *See* The Oxford English Dictionary Online https://www.oed.com/view/Entry/159458 (January 14, 2021) (defining "recess" as, *inter alia*, "to adjourn, suspend.").

[9] Wall testified as follows: "If you look at the dates in our agreement, the weekend before is actually when my—the Thanksgiving break dates start for me to get her. So the time that he was requesting was actually the time that I was supposed to get her for Thanksgiving break."

[10] *See Farris v. Farris*, 285 Ga. 331, 333 (1) (676 SE2d 212) (2009) (reversing finding of contempt when wife's actions did not violate terms of the final divorce

6

Although James's attorney referenced a copy of E. J.'s school holiday schedule during argument, the schedule itself was never tendered into evidence. And, of course, statements by James's attorney are not evidence.[11] But even if we were permitted to consider the substance of these statements, what James's attorney said only appears to *bolster* Wall's testimony that the weekend prior to Thanksgiving in 2019 was included in the Thanksgiving break under the terms of the parenting plan. Indeed, James's attorney claimed that the school holiday schedule showed that E. J. was "released for Thanksgiving on November 25th," which was the Monday prior to Thanksgiving.[12] This is not inconsistent with school having "recessed" for Thanksgiving break the prior Friday as Wall's testimony implied, which would

decree, leaving the trial court with no basis upon which to hold wife in contempt); *McGahee v. Rogers*, 280 Ga. 750, 750-53 (1) (632 SE2d 657) (2006) (holding that contempt finding was unauthorized when party had not violated terms of divorce decree).

[11] *See, e.g.*, *Polite v. State*, 273 Ga. App. 235, 238 (3) (614 SE2d 849) (2005) (explaining that "statements by attorneys are not evidence"); *Sutton v. State*, 263 Ga. App. 188, 191 (2) (587 SE2d 379) (2003) (same).

[12] *See Butts Cnty. v. Pitts*, 214 Ga. 12, 15 (102 SE2d 480) (1958) (taking judicial notice that August 17, 1957, fell on a Saturday); *Sullivan v. Smith*, 209 Ga. 325, 326 (3) (72 SE2d 318) (1952) (taking judicial notice that the month of February in 1952 had 29 days); *Stull v. Jack Stull, Inc.*, 220 Ga. 271, 272 (2) (138 SE2d 379) (1964) (taking judicial notice that June 4, 1964, fell on a Thursday).

necessarily mean that the child was released from having to attend school the following Monday and already on Thanksgiving break the weekend prior to Thanksgiving. In any event, the only *evidence* proffered at the hearing below was Wall's undisputed testimony that school "recessed" for Thanksgiving break the prior Friday. The trial court erred, then, by finding Wall in contempt for failing to send E. J. to Maryland during a weekend that was included in the Thanksgiving visitation period under the terms of the parenting plan.[13]

(b) Next, the trial court found Wall in contempt for preventing James from visiting with E. J. during his allotted time at Christmas 2019. Again, we agree with Wall that the trial court's finding was unsupported by the evidence.

The parenting plan provides that, in odd-numbered years, E. J. is to spend the first half of the Christmas holiday with James. It further specifies that this period encompasses the time "from after school lets out for Christmas break until 9 a.m. on December 27." Notably, unlike the Thanksgiving holiday provision, the parenting plan does not indicate a specific hour at which an exchange is to occur for the beginning of the Christmas holiday, only that it begins "from after school lets out."

_____

[13] *See supra* note 10.

Here, there was evidence that James drove from Maryland to Georgia to pick up E. J., and was at the agreed-upon exchange location (as per the parenting plan) on December 20, 2019, at 4:00 p.m. Wall was at the same location with E. J. earlier in the day between 1:30 p.m. and 1:45 p.m. And while Wall and James spoke to each other by phone as she sat in the parking lot earlier in the day, it is not clear from the record whether the two attempted to resolve the discrepancy between their apparently different plans to make the exchange when neither testified in detail about their conversation at that time. Moreover, nothing in the record reflects any earlier communication between the parties to confirm a definite meeting time for the exchange.[14] Indeed, James only testified that the pickup time was 4:00 p.m. "per the order." But again, the parenting plan does not specify a pickup time for the first half of the Christmas holiday.

In light of the foregoing, the trial court erred in concluding that Wall "did not produce [E. J.] at the exchange location" in willful contempt of court because there is no evidence as to which meeting time was correct—1:30 p.m., when Wall and E. J. *were* at the agreed-upon location, or 4:00 p.m., when James was at the designated

---

[14] Although there was testimony and evidence regarding attempts to confirm the visitation exchange *before* James left Maryland, none of those communications included a suggested time of day to meet at the exchange location.

9

location. Nor is there evidence to show what, if any, effort was made by either Wall *or* James to resolve the discrepancy in a meeting time *after* it arose when the record is completely silent on the extent or substance of their communications after the miscommunication was discovered.[15] Accordingly, the trial court abused its discretion by finding Wall in contempt on these grounds.[16]

---

[15] Although James contends on appeal that when he appeared at the exchange location, he "kept calling [Wall], but [Wall] refused to answer his calls," that is not what the cited portions of the transcript reflect. Instead, these transcript excerpts reflect that James made unreturned phone calls to Wall in response to his being served with the documents related to this action in November 2019, not that he made unreturned phone calls on December 20, 2019.

[16] *Cf. Coppedge v. Coppedge*, 298 Ga. 494, 499 (2) (783 SE2d 94) (2016) ("It is undisputed that in 2010 husband took the children out of town on wife's birthday, thereby denying wife her court-ordered custodial time on that day. Accordingly, the trial court's decision to hold husband in contempt for the denial of wife's custodial time is supported by the record, and we find no abuse of discretion in this ruling."); *Strickland v. Williams*, 234 Ga. 752, 754 (2) (218 SE2d 8) (1975) ("Although the evidence as to this conversation and as to the father's reasons for refusing to allow visitation on December 7, 1974, was in conflict, there was evidence to support the trial court's determination that the father wilfully denied the mother her visitation rights on this occasion."); *Bowen v. Bowen*, 230 Ga. 670, 671-72 (2) (198 SE2d 862) (1973) (holding that evidence of child's alleged illness, its seriousness, and its duration were in conflict, and thus there was evidence to support trial court's finding that mother deliberately denied father his visitation rights under the guise that the child was sick).

(c) Finally, the trial court determined that Wall was in contempt by preventing James from speaking with E. J. on her cell phone since October 2019. Yet again, we agree with Wall that this finding was unsupported by the evidence.

It is undisputed that James repeatedly attempted to speak to his daughter by phone from October 2019 until the time of the hearing in February 2020, but was unsuccessful because E. J. neither picked up nor returned his calls. But there was no evidence that *Wall* in any way restricted E. J.'s telephone access, prohibited her from communicating with James, or discouraged her from calling him.[17] In fact, E. J. testified *in camera* that Wall instructed her to call her father during the relevant period but she did not do so because she was "scared" and knew that any phone call was "going to be awkward." So, while the trial court correctly found that James was not in contact with E. J. "despite his diligent efforts to speak to her," there was no

_____

[17] *Cf. Baars v. Freeman*, 288 Ga. 835, 842 (3) (708 SE2d 273) (2011) (affirming finding that mother was in contempt when it was "undisputed that [mother] severed telephone communications between [father] and the child"); *Answell v. Answell*, 328 Ga. App. 586, 592-93 (3) (759 SE2d 916) (2014) (affirming finding that mother was in contempt for failing to make child available to communicate with father when emails showed she refused to allow make-up time for missed call and mother admitted in another email that she had not always made the child available for webcam communications). Although James points to testimony regarding monitored phone calls, the trial court specifically did not find evidence to support any claim of inappropriate monitoring of calls by Wall in contempt of the parenting plan.

11

evidence this was due to any restrictions Wall placed upon E. J.'s ability to receive or make calls. Instead, the only evidence of any cause for the lack of communication was 15-year-old E. J.'s decision not to speak with her father, which contravened Wall's encouragement that she speak with her father. And the fact that the relationship between James and E. J. "may have deteriorated to the point that [E. J.] [did] not wish to [speak with James] does not, by itself, demand the conclusion [that *Wall*] . . . engaged in contemptuous conduct."[18] As a result, the trial court abused its discretion by finding Wall in willful contempt on this ground as well.[19]

---

[18] *Doritis v. Doritis*, 294 Ga. 421, 425 (5) (754 SE2d 53) (2014). *But see Avren v. Garten*, 289 Ga. 186, 187 (2) (710 SE2d 130) (2011) ("Mother testified the child did not wish to visit with Father and she did not insist that he do so. However, the desires of children under 14 years of age in not wanting to visit their noncustodial parent is not sufficient to deny the noncustodial parent his or her rights of visitation." (punctuation omitted)); *Prater v. Wheeler*, 253 Ga. 649, 651 (322 SE2d 892) (1984) ("We hold that 14-year-olds do have the right to elect not to visit with their noncustodial parents; however, to allow them to make such election without a court order would violate the previously cited statutory provisions and would permit, if not encourage, custodial parents to vent their spite for their former mates by pressuring, directly or indirectly, the children to make such an election.").

[19] *Cf. Baars*, 288 Ga. at 842 (3) (affirming finding that mother was in contempt when it was "undisputed that [mother] severed telephone communications between [father] and the child"); *Answell*, 328 Ga. App. at 592-93 (3) (affirming finding that mother was in contempt for failing to make child available to communicate with father when emails showed she refused to allow make-up time for missed call and mother admitted in another email that she had not always made the child available for webcam communications).

2. Wall also argues the trial court erred in awarding attorney fees to James under OCGA § 19-6-2, which provides, in relevant part, that a grant of attorney fees may be made as "part of the expenses of litigation" in actions for "contempt of court orders involving . . . child custody [and] child visitation rights."[20] But because we have determined that the evidence does not support the trial court's findings of contempt, the award of attorney fees was also erroneous and must be reversed.[21]

3. Finally, Wall contends the trial court erred by sanctioning her for contempt and ordering her to repay the cost of airline tickets purchased by James for "aborted visitation efforts." Once again, we agree.

The trial court ordered Wall to repay $1,130.64 as "reimbursement for travel expenses incurred by [James] for aborted visitation efforts." This total accounts for $232.96 for an October 2019 visit; $332.96 for the November 2019 visit; $150.00 for

---

[20] OCGA § 19-6-2 (a).

[21] *See Farris*, 285 Ga. at 333 (2) ("Because the trial court erred in holding Wife in contempt for refusing to sell the home to Husband, the trial court's award of attorney fees to Husband based on that finding of contempt was also erroneous."); *McGahee*, 280 Ga. at 754 (2) (holding that award of attorney fees under OCGA § 19-6-23 requires a valid determination that mother was in contempt of the consent order); *Brochin v. Brochin*, 294 Ga. App. 406, 407 (2) (669 SE2d 203) (2008) ("Where a finding of contempt is not authorized, an award of attorney fees under OCGA § 19-6-2 also is not authorized." (footnote omitted)).

the December 2019 visit; $187.76 to attend mediation in January 2020; and $226.96 to attend the hearing in February 2020.

As for the October 2019 expenses, the trial court did not find Wall in contempt regarding any allegations concerning October 2019, and so it was erroneous to include these expenses in the total. As for the November 2019 and December 2019 expenses, for the reasons set forth in Division 1 *supra*, the trial court erred by finding Wall in contempt and, thus, it was erroneous to include these expenses in the total. Therefore, it was likewise erroneous to include the expenses related to travel for mediation or the hearing. Accordingly, the $1,130.64 award of travel expenses "for aborted visitation efforts" as a condition for Wall to purge herself of contempt is also reversed.[22]

---

[22] *Cf. Etzion v. Evans*, 247 Ga. 390, 393 (2) (276 SE2d 577) (1981) (concluding that award for expenses was authorized when father was in wilful contempt for failing to return child to the mother as required by divorce decree); *Harvey v. Harvey*, 244 Ga. 199, 199 (259 SE2d 456) (1979) (affirming award of travel expenses when, "during the pendency of this action, the plaintiff has been a South Carolina resident, and the defendant's wrongful withholding of custody of the child necessitated her traveling from South Carolina to Georgia to enforce the divorce decree and regain child custody"); *Bankston v. Warbington*, 319 Ga. App. 821, 823 (3) (738 SE2d 656) (2013) (reversing award of travel expenses incurred as the result of a visitation dispute when the award was not recoverable as a sanction under OCGA § 9-15-14); *Graham v. Hajosy*, 159 Ga. App. 466, 467 (283 SE2d 683) (1981) (affirming award of travel expenses when husband illegally retained custody of the child, forcing mother to incur travel expenses).

For all these reasons, we reverse the trial court's grant of James's counterclaim for contempt and its award of attorney fees and expenses related to the unsupported findings of contempt.

*Judgment reversed. Rickman and Brown, JJ., concur*.